NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4393

THE STATE EX REL. SYX, LAW DIR., ET AL. *v.* STOW CITY COUNCIL ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Syx v. Stow City Council*, Slip Opinion No. 2020-Ohio-4393.]**

*Elections—Amendments to city charter—Mandamus—Relators' claim that city council was required to place proposed amendments to city charter on ballot barred by doctrine of laches—Relators did not establish a clear legal right to have proposed amendments placed on ballot or a clear legal duty on part of city council to place amendments on ballot—Writs denied.*

(No. 2020-1058—Submitted September 9, 2020—Decided September 11, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} The relators in this case are (1) Jaime M. Syx, Law Director of the city of Stow, (2) the city of Stow on its own behalf and on behalf of its 2020 Charter Review Commission (collectively, "the commission"), and (3) the seven individual

members of the commission. The respondents are (1) the Stow City Council, (2) the seven individual members of the city council, and (3) the Summit County Board of Elections ("the board").[1]

{¶ 2} Relators seek a writ of mandamus ordering the city-council respondents (collectively, "the council") to hold an "administrative vote" on nine amendments to the Stow City Charter that were proposed by the commission and to issue an ordinance certifying the amendments to the board for placement on the November 3, 2020 general-election ballot. In the alternative, relators seek a writ ordering the board to accept the proposed amendments directly from the commission itself. We deny the writs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} The Stow City Charter provides for the composition, every five years, of a seven-member charter-review commission that "shall, in meetings open to the public, review the municipal Charter, and, no later than August 1 of the same year, recommend to Council such amendments, if any, to th[e] Charter as in its judgment are conducive to the public interest." Stow City Charter, Sections 20.01 and 20.02. The charter further provides, "Upon approval by two-thirds of Council, Council shall submit to the electors all such proposed amendments to this Charter in accordance, in each instance, with the provisions of the Constitution of Ohio." *Id.* at Section 20.03.

{¶ 4} On July 15, the commission submitted nine proposed charter amendments to the council. Syx avers that she prepared a written memorandum for the council advising it that (1) it has an administrative duty to pass an ordinance conveying the proposed amendments to the board for placement on the ballot, (2)

---

1. The members of the commission are John Baranek, Deborah Matz, Charles Obendorf, Alan Narvy, Wendy Supple, John Moyer, and Jennifer Snyder. The members of the Stow City Council are Sindi Harrison, Jeremy McIntire, Dennis Altieri, Mario Fiocca, Steve Hailer, Cyle Feldman, and Christina Shaw.

it has the authority to review the proposed amendments only as to their form, i.e., to determine whether they fairly and accurately presented the question to be voted on, and (3) it lacks the authority to alter the proposed amendments.

{¶ 5} Nine ordinances were submitted to the council, each presenting one of the proposed charter amendments to the board for placement on the November 3 ballot. At its August 6 regular meeting, the council voted to amend the text of each proposed charter amendment contained within the ordinances.

{¶ 6} The council then voted on the ordinances as modified. None of the ordinances received the five votes (representing two-thirds of the seven-member council) required to pass. Therefore, the council forwarded none of the proposed charter amendments to the board.

{¶ 7} On August 28, relators filed the instant complaint seeking a writ of mandamus ordering the council to do the following:

> [H]old an administrative vote on all nine Commission Amendments, in their original form, at the next regular Council meeting immediately following this Court's order to do so, and issue an ordinance in accordance with the results of the vote, and certify the same to the Respondent, Summit County Board of Elections for their review for placement on the November 3, 2020 general election ballot, forthwith.

In the alternative, relators seek a writ of mandamus ordering the board to accept the proposed charter amendments directly from the city of Stow on behalf of the commission for placement on the November 3 ballot, without the approval of the council.

{¶ 8} Sua sponte, this court set a briefing schedule that was more expeditious than the schedule set forth in S.Ct.Prac.R. 12.08, because the deadline

for the Ohio Secretary of State to approve the form of ballots is September 14, 2020, *see* Am.Sub.H.B. No. 166, Section 735.11, and the deadline for the preparation of ballots under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. 20302, is September 18, *see* R.C. 3511.04. The case is now fully briefed.

## II. ANALYSIS

{¶ 9} We deny the writs on the basis of the doctrine of laches, as well as relators' failure to establish the existence of a clear legal right to the requested relief and a clear legal duty on the part of respondents to provide it.

### A. Laches

{¶ 10} "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). "The question whether laches has barred a claim in mandamus rests in the court's sound discretion." *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 577, 639 N.E.2d 1175 (1994).

#### 1. Knowledge of the Injury and Unreasonable Delay

{¶ 11} In elections cases, relators must act with the utmost diligence. *State ex rel. Citizens for Responsible Green Govt. v. Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 16 (lead opinion). The date upon which the council failed to submit the commission's proposed charter amendments was August 6. The very next day, the commission voted to file this action. Yet, despite the fact that Syx had already prepared a written memorandum for the council providing the legal opinions that underlie relators' arguments in this case, relators did not file their complaint until three weeks later, on August 28. Under those circumstances, the delay was unreasonable. *See, e.g., State ex rel. Landis v. Morrow Cty. Bd. of*

*Elections*, 88 Ohio St.3d 187, 189, 724 N.E.2d 775 (2000) (applying laches to 22-day delay).

### 2. Absence of an Excuse for the Delay

{¶ 12} In their merit brief, relators assert that the delay was due, at least in part, to Syx's desire to wait for an opinion that the council had sought from outside counsel regarding alternative interpretations of the Stow City Charter. However, as the council points out and relators acknowledge, the decision to retain outside counsel had to be approved by the mayor of the city of Stow. The council asserts that the mayor did not sign the outside-counsel agreement until August 31—after this lawsuit had been filed. In their reply brief, relators concede that they "had no idea when Council officially retained outside legal counsel." We therefore reject relators' claim that their delay in filing this action was justified by Syx's expectation of an impending opinion from outside counsel.

{¶ 13} The only other excuses relators present for their delay in filing this action are the high number of personal and professional obligations of the attorneys in Syx's office. However, that is not a valid excuse for delay in an expedited-election case:

> [T]he committee asserts that its delay was excusable because the exhibits in the case are voluminous and its attorney had to juggle this matter with other cases and priorities. This assertion ignores the fact that a similar argument could likely be made in every election case and, if successful, would swallow the doctrine of laches.

*Citizens for Responsible Green Govt.* at ¶ 22. We therefore determine that relators have not presented a valid excuse for their delay.

### 3. Prejudice

{¶ 14} "Prejudice is not inferred from a mere lapse of time." *Polo*, 74 Ohio St.3d at 145, 656 N.E.2d 1277. However, "when a relator's unreasonable delay in filing a mandamus case causes the matter to become an expedited election matter when filed, that delay is presumed to constitute prejudice for laches purposes." *Citizens for Responsible Green Govt.*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, at ¶ 25. That is because expediting an election case "restricts respondents' time to prepare and defend against relators' claims, or impairs boards of elections' ability to prepare, print, and distribute appropriate ballots because of the expiration of the time for providing absentee ballots." *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18.

{¶ 15} This case would have been automatically expedited under S.Ct.Prac.R. 12.08 even if relators had filed their complaint on the day the council voted on the ordinances. But as the council notes, relators' delay nevertheless prejudiced it because the delay brought the case so close to the statutory deadlines for finalizing ballots that this court was forced to *further* expedite the case. The council argues that relators' delay "caused prejudice to Respondents by making this 'expedited elections case' an *emergency* * * *." (Emphasis sic.) We agree.

{¶ 16} Under S.Ct.Prac.R. 12.08, respondents would have had five days after the service of the complaint to file their answers and three days after receiving relators' merit brief and evidence to file their own briefs and evidence. By contrast, our sua sponte order of August 28 provided respondents with only one business day to file their answers to the complaint and only one and one-half days after the filing of relators' merit brief and evidence to file their own briefs and evidence. This schedule—which was necessitated by the September 14 deadline for the secretary of state to approve the form of ballots and the September 18 deadline for the board to prepare ballots under the UOCAVA—provided respondents with significantly less time to prepare and defend against relators' claims than they would have had

under the already expedited schedule set forth in S.Ct.Prac.R. 12.08. Relators' delay thereby prejudiced respondents. *See Willke* at ¶ 18.

{¶ 17} Relators also argue that the council can act on election matters only at a *regular* council meeting, citing Section 4.09(f) of the Stow City Charter. The council's next regular meeting is September 24. If we were to issue a writ of mandamus, the council would be faced with a choice to either vote on an election matter at a special meeting—which relators aver would violate the charter—or to submit the proposed charter amendments to the board *after* the statutory deadlines for approving the form of the ballot and preparing UOCAVA ballots. That would also constitute prejudice. *See State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 18 ("If relators had acted more promptly, [the passage of the statutory deadline to have absentee ballots printed] might have been avoided and any potential prejudice to the county in its statutory obligation to absentee voters would have been minimized"); *see also Willke*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, at ¶ 18. The doctrine of laches therefore bars relators' claims.

## B. *Clear Legal Right and Clear Legal Duty*

{¶ 18} To be entitled to a writ of mandamus, relators must establish "a clear legal right to the requested relief, a clear legal duty on the part of respondents to grant it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 17. Relators have not established the existence of a clear legal right to the requested relief or a clear legal duty on the part of the council or the board to provide it.

### 1. The Council

{¶ 19} Relators argue that (1) the council has a duty to hold an "administrative vote" on the commission's proposed charter amendments in their original, unmodified form, (2) an administrative vote means that the council may

review the proposed amendments only as to their form, and (3) the council's review of the form involves only determining whether the proposed amendments' text fairly and accurately presents the question to be decided by the voters. Relators also allude to a purported right of the commission to have its proposed amendments reach the ballot. Relators argue that the plain language of the charter prohibits the council from modifying the commission's proposed charter amendments or rejecting those with which it disagrees.

{¶ 20} Section 20.02 of the Stow City Charter provides that the commission shall "*recommend* to Council such amendments, if any, to this Charter as in its judgment are conducive to the public interest." (Emphasis added.) Section 20.03 provides, "*Upon approval by two-thirds of Council*, Council shall submit to the electors all such proposed amendments to this Charter in accordance, in each instance, with the provisions of the Constitution of Ohio." (Emphasis added.) Neither the charter nor the Ohio Constitution imposes a clear legal duty on the council to submit the commission's proposed charter amendments to the electors or grants the commission a clear legal right to determine what amendments the council submits.

{¶ 21} The express language of the charter refers to the commission's proposed amendments as "recommendations" and requires their submission to the electors only upon "approval" by two thirds of the council. The charter does not state that the council's approval is limited to the form of the amendments or that the council must approve the recommendations without modification. Relators argue that their interpretation of the charter must prevail or else Section 19.01 of the charter, which allows the council to submit its own proposed charter amendments to the electors upon the approval of two-thirds of the council, would swallow Section 20.03. Relators further argue that the council has violated Section 4.18 of the charter, which prohibits the council from abolishing any commission that the charter has created. But nothing in Section 19.01 or Section 4.18 is

8

inconsistent with the commission serving as an advisor for the purpose of making recommendations—as Section 20.02 expressly provides—that two-thirds of the council may or may not approve under Section 20.03.

{¶ 22} With respect to the Ohio Constitution, "[t]he 'manifest object' of Section 9 of Article XVIII 'is to provide the procedure for the submission of a charter amendment to electors,' and these 'requirements are clear and complete, and are not to be added to or subtracted from.' " *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 31, quoting *Billington v. Cotner*, 25 Ohio St.2d 140, 146, 267 N.E.2d 410 (1971). Article XVIII, Section 9 of the Ohio Constitution provides only two procedures by which proposed charter amendments may reach the ballot: "upon petitions signed by ten per centum of the electors of the municipality," and "by a two-thirds vote of the legislative authority." Under Section 4.01 of the charter, all legislative power in the city of Stow is vested in the council. Therefore, as the council points out in its merit brief, Article XVIII, Section 9 grants neither the mayor, the clerk, nor any other municipal officer or body the authority to approve proposed charter amendments for submission to the electors. Accordingly, the charter cannot grant the commission the authority to determine what proposed amendments will reach the electors, subject only to approval by the council as to their form, without impermissibly adding to the prescribed procedures set forth in Article XVIII, Section 9.

{¶ 23} Relators' arguments are primarily based not on the charter or the Ohio Constitution but on three of this court's decisions, all of which are inapposite: *State ex rel. Rosch v. Cuyahoga Cty. Bd. of Elections*, 42 Ohio St.2d 364, 328 N.E.2d 793 (1975), *State ex rel. Kittel v. Bigelow*, 138 Ohio St. 497, 37 N.E.2d 41 (1941), and *State ex rel. Schuck v. Columbus*, 152 Ohio St.3d 590, 2018-Ohio-1428, 99 N.E.3d 383.

**{¶ 24}** In *Rosch*, we held that the Broadview Heights City Council had properly submitted proposed charter amendments to the electors by way of an ordinance passed without three readings, because the council's duty was administrative. *Id*. at 366. However, the Broadview Heights City Charter lacked the "upon approval by two-thirds of Council" provision at issue here. *Id*. at 364, fn.1. Moreover, the narrow issue in *Rosch* was whether the council had used a proper procedure to pass the ordinance—not whether the council had been required to pass the ordinance.

**{¶ 25}** In *Kittel*, we considered a city council's determination of the sufficiency and validity of *petitions* to submit a charter amendment to the electors. *Kittel* at 503. Our opinion in *Kittel* does not speak to the standard under which a council must review *charter amendments* proposed by a charter-review commission. *See id*.

**{¶ 26}** Finally, in *Schuck*, we considered whether the city of Columbus had complied with a provision in its charter that specifically required an accurate summary of proposed charter amendments to be submitted to the electors. 152 Ohio St.3d 590, 2018-Ohio-1428, 99 N.E.3d 383, at ¶ 12. However, the Stow City Charter contains no similar provision. These cases are inapplicable to the facts presented here.

**{¶ 27}** At bottom, relators' arguments appear to rely on a misallocation of the burden of proof. Relators argue that when the Stow City Council in 2019 amended Section 20.03 of the Stow City Charter, it could have added language clearly stating that the council had the discretion to reject or modify charter amendments proposed by the commission with which it disagreed. Relators posit that because the added language does not clearly provide such discretion, the council cannot interpret Section 20.03 as granting it those powers. However, in a mandamus case, the *relator* has the burden to show the existence of a legal right and a legal duty that are *clear*. *Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097,

18 N.E.3d 426, at ¶ 17. Section 20.03 requires the council to act if two-thirds of council give their "approval" of the commission's proposed charter amendments. To the extent that Section 20.03 fails to clearly specify the parameters of the required approval, it is relators' mandamus claim—not the council's interpretation of the charter—that we must reject.

### 2. The Board

{¶ 28} Relators concede that "[t]he Board of Elections does not have a duty to place the Commission Amendments on the ballot until Council fulfills its duty, first." Accordingly, we reject relators' mandamus claims against the board as unripe. *See State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.*, 158 Ohio St.3d 370, 2020-Ohio-40, 143 N.E.3d 488, ¶ 18 (claim against board of elections not ripe when duty to place issue on ballot arose only after school board's certification of the issue, which had not yet occurred).

### III. CONCLUSION

{¶ 29} Based on the foregoing, we deny the writs.

Writs denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

———————————

Jaime M. Syx, Stow Law Director, and Callie J. Channell, Deputy Law Director, for relators.

Roetzel & Andress, L.P.A., Stephen W. Funk, Justin Markey, and Emily K. Anglewicz, for respondents Stow City Council, Sindi Harrison, Jeremy McIntire, Dennis Altieri, Mario Fiocca, Steve Hailer, Cyle Feldman, and Christina Shaw.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Raymond J. Hartsough and John Galonski, Assistant Prosecuting Attorneys, for respondent Summit County Board of Elections.

_____