[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jones v. LaRose*, Slip Opinion No. 2022-Ohio-2445.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2445

[THE STATE EX REL.] JONES *v.* LAROSE ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jones v. LaRose*, Slip Opinion No. 2022-Ohio-2445.]

*Mandamus—Elections—In election cases, a relator must act with the utmost diligence—Relator's claim that he has a clear legal right to have his declaration of candidacy and supporting petition accepted as timely by the board of elections is barred by doctrine of laches—Writ denied.*

(No. 2022-0813—Submitted July 12, 2022—Decided July 18, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} On April 27, 2022, relator, Erik W. Jones, filed a declaration of candidacy and petition to appear on the August 2 primary ballot as a candidate for the Republican Party State Central Committee. Respondent Lorain County Board of Elections ("the board") did not certify Jones's name to the ballot, based on the

instructions in respondent Ohio Secretary of State Frank LaRose's Directive 2022-34 to reject declarations and petitions of state-central-committee-member candidates filed after February 2, 2022.

**{¶ 2}** In this expedited election case, Jones seeks a writ of mandamus compelling Secretary LaRose to instruct the county boards of elections to accept (1) any declarations of candidacy filed before 4:00 p.m. on May 4, 2022, that are otherwise valid and (2) any declarations of intent to be a write-in candidate filed before 4:00 p.m. on May 23, 2022, that are otherwise valid. He also seeks a writ compelling the board to certify his candidacy to the August 2 ballot. Alternatively, he seeks a writ compelling Secretary LaRose to instruct all county boards of elections to accept for filing any candidate declarations until the tenth day after a decision in this case.

**{¶ 3}** Secretary LaRose urges us to deny the writ based on the doctrine of laches. We find merit to Secretary LaRose's argument. For the reasons discussed below, we deny Jones's claims.

## I. Background

**{¶ 4}** This case arises from the same facts involved and seeks relief comparable to the relief we granted in *State ex rel. DeMora v. LaRose*, __ Ohio St.3d __, 2022-Ohio-2173, __ N.E.3d __. The original date for Ohio's 2022 primary election, as set by the General Assembly, was May 3, 2022. Pursuant to R.C. 3513.05, the deadline to file declarations of candidacy for a partisan primary was February 2, that being the ninetieth day before the day of the primary election.

**{¶ 5}** On March 16, we invalidated for the third time a General Assembly–district plan adopted by the Ohio Redistricting Commission. *League of Women Voters of Ohio v. Ohio Redistricting Comm.*, __ Ohio St.3d __, 2022-Ohio-789, __ N.E.3d. __, ¶ 2. On March 23, Secretary LaRose issued Directive 2022-31, which instructed the county boards of elections to prepare for the May 3 primary without including the primary contests for the Ohio House, Ohio Senate, and state central

2

committees. Secretary of State Directive 2022-31, Revised Form of Ballot for the May 3, 2022 Primary Election, available at https://www.ohiosos.gov /globalassets/elections/directives/2022/dir2022-31.pdf#page=1 (accessed July 13, 2022) [https://perma.cc/BX6V-ARBK].

{¶ 6} On May 27, a three-judge panel of the United States District Court for the Southern District of Ohio imposed a map for Ohio to use for this year's General Assembly elections and ordered Secretary LaRose to push back Ohio's state-legislative and state-central-committee primaries to August 2, 2022. *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-cv-0773, 2022 U.S. Dist. LEXIS 95341, *5 (May 27, 2022). When the federal court's order took effect on May 28, there were only 66 days until the August 2 election date. On the same day, Secretary LaRose issued Directive 2022-34 to set out a new, compressed elections calendar. The directive stated:

> The federal court order did not alter the partisan candidate filing deadlines for the primary election. The filing deadline for candidates for State Representative, State Senator, or Member of State Central Committee to file a declaration of candidacy was 4:00 p.m. on February 2, 2022. * * * If a declaration of candidacy * * * was filed after [the] filing deadline[], the board must reject the candidacy.

(Footnotes omitted.) Secretary of State Directive 2022-34, Instructions for the August 2, 2022 Primary Election, available at https://www.ohiosos.gov /globalassets/elections/directives/2022/dir2022-34.pdf#page=1 (accessed July 12, 2022) [https://perma.cc/U6NW-HJ3D].

{¶ 7} On April 27, 2022, Jones filed a declaration of candidacy and supporting petition with the Wood County Board of Elections seeking to appear on

3

the August 2 ballot as a candidate for the Republican Party State Central Committee.[1]  The petition was transferred to the Lorain County Board of Elections, which on June 2 notified Jones that his candidacy was not certified to the August 2 ballot because "[t]he petition was filed after the filing deadline."  The board cited Directive 2022-34 as one source for the deadline.

{¶ 8} On May 31, 2022, a few days after Secretary LaRose issued Directive 2022-34, six relators filed the lawsuit in *DeMora*.  They alleged that the 90-day filing deadline under R.C. 3513.05 reset to May 4 by operation of law when the federal court rescheduled the primary for August 2.[2]  We agreed and ordered Secretary LaRose and the relevant boards of elections to accept the declarations of the six original *DeMora* relators as timely filed.  *DeMora*, __ Ohio St.3d __, 2022-Ohio-2173, __ N.E.3d __, at ¶ 51.

{¶ 9} Jones filed this case on July 1, 2022, one month after the board rejected his petition and seven days after we announced our decision in *DeMora*. We ordered an expedited briefing schedule, *see* 167 Ohio St.3d 1449, 2022-Ohio-2323, __ N.E.3d __, pursuant to which the parties have submitted merit briefs and evidence.

## II.  Legal analysis

{¶ 10} With respect to the timeliness of his declaration of candidacy and supporting petition, Jones is similarly situated to the *DeMora* relators: he filed more than 90 days before the August 2 election date.  He therefore contends that our decision in *DeMora* gives him a clear legal right to have his declaration and petition accepted as timely.  However, Jones is differently situated from the *DeMora*

---

1. If a prospective candidate runs for an office that is to be submitted to the electors of a district that is situated in more than one county, then the petition shall be filed with the board of elections of the county "within which the major portion of the population thereof * * * is located."  R.C. 3513.05. Jones seems to suggest that he filed the petition in Wood County pursuant to this statute.

2. *DeMora* also involved relators seeking to qualify for the ballot as write-in candidates, who are subject to a different statutory deadline.  *See* R.C. 3513.041.

relators in one critical respect: he failed to act with the requisite diligence. As Secretary LaRose points out, the timing of when Jones filed his complaint contrasts sharply with the actions of the relators in *DeMora*. Jones's suit is therefore barred by the doctrine of laches.

{¶ 11} In election cases, a relator must act with the utmost diligence. *State ex rel. Syx v. Stow City Council*, 161 Ohio St.3d 201, 2020-Ohio-4393, 161 N.E.3d 639, ¶ 11. Laches may bar relief in an election matter if the person seeking relief fails to act with such diligence. *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30. The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

### A. *Unreasonable delay*

{¶ 12} The board informed Jones that he would not be certified to the ballot by a letter dated June 2, 2022. At that time, the election was only two months away. Jones let half that time elapse before filing his lawsuit on July 1. We have found unreasonable delay by relators who filed their complaints with much greater promptness than Jones. *See, e.g.*, *Syx* at ¶ 11 (22 days); *State ex rel. Landis v. Morrow Cty. Bd. of Elections*, 88 Ohio St.3d 187, 189, 724 N.E.2d 775 (2000) (22 days); *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995) (17 days). We hold that Jones unreasonably delayed in commencing his suit.

### B. *Absence of an excuse for the delay*

{¶ 13} In his reply brief, Jones offers an excuse for his delay in filing suit. He claims that he

did everything he could with the knowledge of law he had and the resources available to him from the June 2nd declining of his candidacy from the Lorain County Board of Elections until he filed his Complaint with this court. [He] directly sought relief from the Respondents' office and was turned down. [He] sought legal counsel but was unable to acquire an attorney in the time required who was willing to take the case with the resources [he] had available.

**{¶ 14}** "[A]ny delay in filing an expedited election case that is attributable to efforts to seek reconsideration from the board of elections, and thereby obviate the need for litigation, is not unreasonable." *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 10. But other than the bare allegation in his reply brief, Jones has presented no evidence that he sought reconsideration from the board or Secretary LaRose. We cannot determine how much, if any, of the delay is attributable to his efforts to seek reconsideration. Likewise, Jones presents no evidence that he was actively seeking legal counsel during the month of May. And even if he had been, he does not cite any authority for the proposition that the need to seek legal counsel justifies delay in an expedited election case. We hold that Jones has failed to establish a valid excuse for the delay.

### C. Knowledge, actual or constructive, of the injury or wrong

**{¶ 15}** The evidence shows that the board sent Jones a letter announcing its decision on June 2. Jones has not denied timely receipt of that letter. In fact, his claim in his reply brief that he sought reconsideration and then diligently sought legal counsel is a tacit admission that he had actual knowledge of the board's decision.

*D. Prejudice to the other party*

**{¶ 16}** Prejudice to the other party must be material before laches will bar relief. *State ex rel. Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 26. An unreasonable delay that prevents a court decision before the deadline for distributing absentee ballots is prejudicial. *See State ex rel. Valore v. Summit Cty. Bd. of Elections*, 87 Ohio St.3d 144, 146, 718 N.E.2d 415 (1999). In this case, Jones waited to file his lawsuit until two weeks *after* the June 17 deadline for finalizing ballots under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20302, which is prejudicial to the board. *See State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 14 (holding that "cases in which laches is dispositive generally involve prejudice to the respondents in their statutory obligation to absentee voters to have absentee ballots printed and ready for use"). Not only has early voting begun, but the election itself is less than three weeks away. Jones's delay has made it impossible for us to decide the case earlier, despite the imposition of an aggressive expedited-briefing schedule. We hold that Jones's unreasonable delay has resulted in prejudice to the board in its administration of the election.

## III. Conclusion

**{¶ 17}** For the reasons discussed herein, we deny the writ of mandamus on the ground of laches.

Writ denied.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only, with an opinion joined by FISCHER, J.

FISCHER, J., concurs in judgment only, with an opinion.

_____

**KENNEDY and DEWINE, JJ., concurring in judgment only.**

{¶ 18} In *DeMora v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-2173, ___ N.E.3d ___, the majority ordered onto the ballot the names of a half-dozen people who had missed the deadline to qualify as candidates for the 2022 primary election. Therefore, one might think that relator, Erik W. Jones, who filed a declaration of candidacy and supporting petition a week before the earliest filer in *DeMora*, would also qualify for the ballot. But nothing is as expected in the world the majority has created in its General Assembly–redistricting jurisprudence. For *this* candidate, the majority has determined that the doctrine of laches applies. We would deny Jones's request for a writ of mandamus for a far simpler reason: Jones, like the relators in *DeMora*, failed to file his declaration of candidacy and supporting petition in time to qualify for the May 3, 2022 primary election.

{¶ 19} For the reasons set forth in our opinions concurring in part and dissenting in part in *DeMora*, any person seeking to run in the 2022 primary election for a seat in the General Assembly or for a spot on the state central committees had to file his or her declaration of candidacy and petition by February 2, 2022, or February 22 for write-in candidates. *See id*. at ¶ 54 (Kennedy, J., concurring in part and dissenting in part); *id.* at ¶ 101 (DeWine, J., concurring in part and dissenting in part). Only those candidates who were eligible for the May 3 primary could benefit from the federal court's order moving part of the primary to August 2. *See id*. at ¶ 77 (Kennedy, J., concurring in part and dissenting in part).

{¶ 20} Jones filed his declaration of candidacy and supporting petition on April 27, 2022. Because Jones did not comply with Ohio law, he has no clear legal right to the relief he seeks, and respondent Lorain County Board of Elections has no clear legal duty to accept his declaration of candidacy and supporting petition for the 2022 primary election. Therefore, we would deny the writ on that basis. Because the majority relies on the doctrine of laches, we concur in judgment only.

FISCHER, J., concurs in the foregoing opinion.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 21} I join the joint opinion concurring in judgment only. This court should deny the writ of mandamus requested by relator, Eric W. Jones, because like the relators in *State ex rel. DeMora v. LaRose*, ___ Ohio St.3d ___, 2022-Ohio-2173, ___ N.E.3d ___, Jones failed to file his declaration of candidacy and supporting petition in time to qualify for the May 3, 2022, primary election. I write separately because I find it curious that the majority opinion rejects Jones's complaint based on the doctrine of laches.

{¶ 22} Laches is a doctrine that developed in courts of equity. *Smith v. Smith*, 168 Ohio St. 447, 456, 156 N.E.2d 113 (1959). It allows a court to refuse to aid " 'stale demands where a party has slept upon his rights and acquiesced for a great length of time.' " *Russell v. Fourth Natl. Bank*, 102 Ohio St. 248, 266, 131 N.E. 726 (1921), quoting *Smith v. Clay*, 3 Bro.C.C. 640. Laches can "bar relief in an election-related matter if the person seeking relief fail[ed] to act with utmost diligence." (Cleaned up.) *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8. But laches does not apply every time a party delays in asserting a right; it also requires the other party to have been materially prejudiced by the delay. *Connin v. Bailey*, 15 Ohio St.3d 34, 36, 472 N.E.2d 328 (1984).

{¶ 23} Laches is a "defense that we apply sparingly in expedited election cases," *State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 21, and it is one that "rarely prevails," *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8. Nevertheless, the majority opinion finds that this is one of the extraordinary election cases in which the doctrine of laches applies, because of the prejudice that respondents, Secretary of State Frank LaRose and the Lorain County Board of Elections, would experience due to Jones's delay in filing his

complaint for a writ of mandamus. I am perplexed by the majority opinion's finding of prejudice in this case given the majority opinion's position in *DeMora*.

{¶ 24} The majority opinion maintains that because Jones waited two weeks after the June 17 deadline for finalizing ballots under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. 20302, to challenge the board's denial of his candidacy *and* because early voting has already begun, his delay would be prejudicial to respondents. But this makes no sense based on the majority opinion's logic in *DeMora*.

{¶ 25} Indeed, the majority opinion in *DeMora* rejected the notion that there was any prejudice to the state, even when its ruling required the secretary of state and several boards of elections to change their ballots after the UOCAVA ballots had already been prepared and mailed out. *See DeMora*, ___ Ohio St.3d ___, 2022-Ohio-2173, ___ N.E.3d ___, at ¶ 45; *id.* at ¶ 132 (DeWine, J., concurring in part and dissenting in part); 52 U.S.C. 20302; R.C. 3511.04. The majority opinion in *DeMora* stated, "While we are mindful of the burdens it may place on a few boards to prepare a new ballot after the UOCAVA date has passed, we will not hesitate to order that a wrongly excluded candidate be added to the ballot, notwithstanding the passage of the UOCAVA date." *Id.* at ¶ 45. In this case, Jones filed his complaint after the UOCAVA deadline had passed but before early in-person voting and absentee voting by mail started. If the UOCAVA deadline does not matter and this court will not hesitate to order that a wrongfully excluded candidate be added to the ballot, then why deny Jones? He was in the same position as the relators in *DeMora* at the time his complaint was filed.

{¶ 26} The majority opinion emphasizes that early voting started while this case was being briefed and claims that this fact makes a difference. But I do not see how, especially because UOCAVA voting is early voting. The fact that early in-person voting and absentee voting started while this case was being briefed is not dissimilar to the situation that the parties experienced in *DeMora*, in which

UOCAVA ballots had already been mailed out to overseas citizens for voting. *See id.* at ¶ 132 (DeWine, J., concurring in part and dissenting in part); 52 U.S.C. 20302; R.C. 3511.04.

{¶ 27} The ballots for UOCAVA citizens were to be ready for distribution on June 17, 2022. *See id.* at ¶ 45; R.C. 3509.01(B)(1). And voting for those citizens began on June 17. Secretary of State Frank LaRose, Voting Schedule for the 2022 Elections, https://www.ohiosos.gov/elections/voters/current-voting-schedule /2022-schedule/ (accessed July 14, 2022) [https://perma.cc/8JMV-AYA8]. This court issued its decision in *DeMora* on June 24, after the UOCAVA ballots had been mailed out, and that decision required the secretary of state and various boards of elections to revise, reprint, and mail out new ballots. *See DeMora* at ¶ 51; *id.* at ¶ 132 (DeWine, J., concurring in part and dissenting in part); 52 U.S.C. 20302; R.C. 3511.04. The delay caused by the need to revise the UOCAVA ballots deprived UOCAVA voters of at least a week of early voting, if not more. And it is possible that the *DeMora* decision created additional confusion for UOCAVA voters since it is conceivable that they had already received and mailed in their UOCAVA ballots prior to the *DeMora* decision. *See DeMora* at ¶ 132 (DeWine, J., concurring in part and dissenting in part). So why was the situation in *DeMora* not prejudicial to the state and to Ohioans when it too affected early voting for UOCAVA citizens?

{¶ 28} The majority opinion stresses the early-voting timeframe as a factor, noting that there is less than three weeks before the election and that early in-person voting has already begun to support its point that granting Jones's writ would cause prejudice. And it follows with the statement that "Jones's delay has made it impossible for us to decide the case earlier." Majority opinion, ¶ 16. But Jones filed his complaint in this court on July 1, five days before early in-person and absentee voting started. And on the same day, this court ordered an expedited-election-case briefing schedule to begin right before and continue past the start of early in-person and absentee voting on July 6. 167 Ohio St.3d 1449, 2022-Ohio-

11

2323, __ N.E.3d __; *see* Secretary of State Frank LaRose, Early Voting, https://www.ohiosos.gov/elections/voters/toolkit/early-voting/ (accessed July 14, 2022) [https://perma.cc/BAF7-TYQH]. Had we ordered the briefing schedule to begin earlier, which is not unheard of, *see State ex rel. Speweik v. Wood Cty. Bd. of Elections*, 158 Ohio St.3d 1433, 2020-Ohio-996, 141 N.E.3d 240 (expedited answers ordered in case challenging the primary date during the COVID-19 pandemic), and had the majority opinion simply followed the logic it applied in *DeMora*, it is unlikely that the impact on early in-person and absentee voting would be a factor.

{¶ 29} Nevertheless, based on the majority opinion's rationale in *DeMora*, the difference in time between this court's decision in *DeMora*, Jones's filing of his complaint, the end of briefing in this case, and the start of early voting is nominal. Early in-person and absentee voting by mail began July 6. Secretary of State Frank LaRose, Voting Schedule for the 2022 Elections, https://www.ohiosos.gov /elections/voters/current-voting-schedule/2022-schedule/ (accessed July 14, 2022) [https://perma.cc/8JMV-AYA8]. And Ohioans may mail in their absentee ballots until August 1 and vote in person until August 2. *Id.* The loss of at least one week of early voting for UOCAVA citizens meant little to the majority opinion in *DeMora*; it is puzzling why the loss of a week of early voting for all Ohioans means anything to the majority in this case. Are UOCAVA citizens less important than other Ohioans? The majority opinion certainly makes it seem so.

{¶ 30} The fact of the matter is that respondents are in the same position here that the respondents were in during the resolution of *DeMora*. In *DeMora*, the ballots needed to be revised, reprinted, and mailed out for our UOCAVA citizens, and the *DeMora* respondents were left with only two weeks before the start of early in-person voting and absentee voting to complete that task. In this case, it is true that granting Jones's writ and placing him on the ballot would likely create more widespread chaos for the secretary of state, the affected boards of elections, and

Ohio voters than what was caused by the decision in *DeMora*, but that does not necessarily make the potential disruption any worse than the prejudice and chaos that was facilitated by the majority opinion in *DeMora*. In both situations, the respondents would be saddled with large financial burdens and extremely short deadlines. In both situations, Ohio voters, especially our UOCAVA citizens, would have been negatively affected—either because of their decreased opportunity to participate in the early-voting period or because they had already voted, either by mail or in person. If the majority opinion emphasized the widespread problems that would be created by granting Jones's writ, its argument could be convincing, but even that rationale would still be ignoring the fact that by the time we resolved *DeMora*, the problems with adding new candidates to the ballot were already realized and widespread.

{¶ 31} The majority opinion essentially makes a distinction without a difference to deny Jones, an individual who filed his declaration of candidacy and supporting petition before any of the relators in *DeMora*, an opportunity to be included in this primary election. And we must acknowledge the irony of this situation—the majority opinion applies the equitable doctrine of laches, a doctrine that is based in fairness and rarely applied in election cases, to deny a primary candidate an opportunity to be included on the ballot when he was in the same if not a better position than the relators in *DeMora* who were granted that opportunity. Had the majority opinion admitted that its logic in *DeMora* was wrong, I could better understand its analysis and might agree that laches could apply in this case. But because the majority opinion hides behind the doctrine of laches to avoid the can of worms that it opened in *DeMora* and because Jones's complaint should be denied simply for the reason that he failed to file his declaration of candidacy and supporting petition in time to qualify for the May 3, 2022 primary election, I must respectfully concur in judgment only.

———————————

Erik W. Jones, pro se.

Shumaker, Loop, & Kendrick, L.L.P., Larry J. Obhof Jr., and Douglas G. Haynam, for respondent Secretary of State Frank LaRose.

J.D. Tomlinson, Lorain County Prosecuting Attorney, and Greg Peltz, Assistant Prosecuting Attorney, for respondent Lorain County Board of Elections.

————————————