[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Imposters, Ltd. v. Cuyahoga Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4588.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4588

THE STATE EX REL. IMPOSTERS, LTD. *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Imposters, Ltd. v. Cuyahoga Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4588.]

*Elections—Mandamus—Writ sought to compel board of elections to certify local liquor option for general-election ballot—Board of elections did not abuse its discretion or act in clear disregard of applicable law in rejecting relator's petition and declining to certify local liquor option for general-election ballot—Writ denied.*

(No. 2024-1248—Submitted September 17, 2024—Decided September 19, 2024.)

IN MANDAMUS.

————————

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.  FISCHER, J., concurred in judgment only.

**Per Curiam.**

{¶ 1} Relator, Imposters, Ltd., seeks a writ of mandamus ordering respondent, the Cuyahoga County Board of Elections, to certify a local liquor option for placement on the November 5, 2024 general-election ballot. The board declined to place the question on the ballot because it found that Imposters' local-liquor-option petition did not strictly comply with statutory requirements. We deny the writ because the board did not abuse its discretion or act in clear disregard of applicable law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Placing a Local Liquor Option on the Ballot*

{¶ 2} R.C. 4301.323 confers on electors of an election precinct the privilege of a local-option election to consider the question whether "the sale of beer, wine and mixed beverages, or spirituous liquor at a particular location within the precinct" should be permitted. An applicant for or holder of a liquor permit at a particular location within the precinct may petition for a local-liquor-option election in that precinct. R.C. 4301.323(A) and (B).

{¶ 3} To exercise the privilege of a local-liquor-option election conferred by R.C. 4301.323, a petitioner must present a petition to the board of elections of the county in which the precinct is located at least 90 days before the day of a general election or a special election held on a day on which a primary election may be held. R.C. 4301.333(A). If the petition is for the submission of a question specified in R.C. 4301.355(B)(1), "[t]he petition shall contain" certain information, including "[a] notice that the petition is for the submission of the question or questions set forth in section 4301.355 of the Revised Code." R.C. 4301.333(B)(1). Included among the questions set forth in R.C. 4301.355 is the one relevant to this case: "Shall the sale of _____ (insert beer, wine and mixed beverages, or spirituous liquor) be permitted by _____ (insert name of applicant [or] liquor

2

permit holder . . . at _____ (insert address of the particular location . . . ) in this precinct?"  R.C. 4301.355(B)(1).

### B.  The Liquor Permits Issued to Imposters

**{¶ 4}** R.C. Ch. 4303 sets forth various types of liquor permits that the Ohio Division of Liquor Control may issue.  The following permits are relevant to this case:

- the D-1 permit, which authorizes retail sale of beer, R.C. 4303.13;
- the D-2 permit, which authorizes retail sale of "cider, wine, and prepared and bottled cocktails, cordials, and other mixed beverages," R.C. 4303.14;
- the D-3 permit, which authorizes retail sale of spirituous liquor by the individual drink, R.C. 4303.15; and
- the D-6 permit, which authorizes Sunday sales for holders of a D-2 or D-3 permit, R.C. 4303.182(A).

**{¶ 5}** Imposters operates a performing-arts theater in Cleveland.  In July 2022, Imposters submitted to the division of liquor control (1) an application to transfer to its business location the ownership of D-1, D-2, and D-3 permits and (2) an application for issuance of a new D-6 liquor permit.

**{¶ 6}** In February 2023, the division of liquor control advised Imposters about the local-liquor-option status for liquor sales at its location.  According to local-liquor-option voting records obtained by the division, Imposters' permit location was completely "dry" for wine and spirituous liquor, but sales of beer and mixed beverages were permitted on Monday through Saturday.  Accordingly, the division issued D-1 (beer) and D-2 (limited to mixed beverages) permits for 2023 to Imposters but held the D-3 (spirituous liquor) and D-6 (Sunday sales) permit applications in "pending" status.

**{¶ 7}** Though a D-2 permit issued under R.C. 4303.14 would normally allow sales of wine *and* mixed beverages, the D-2 permit issued to Imposters stated

"sale of wine illegal" because of the location's local-liquor-option status. Based on the board's voting records, the allowance of mixed beverages but prohibition of wine at Imposters' location dates back to a local-option election in November 1969, when precinct voters opted to allow sales of beer and mixed beverages but voted against sales of wine and spirituous liquor.

{¶ 8} Under its current liquor permits, Imposters is permitted to sell beer under a D-1 permit, mixed beverages under a D-2 permit, and both on Sundays under a D-6 permit.[1] Imposters' D-2 permit remains partial, authorizing Imposters to sell "wine and certain pre-packaged drinks [i.e., mixed beverages]," but then containing the limiting language, "sale of wine illegal." Imposters does not currently have a permit to sell wine or spirituous liquor.

### C. Imposters' Local-Liquor-Option Petition

{¶ 9} Endeavoring to overcome all the liquor restrictions applicable to its location, Imposters seeks to place a local-liquor-option question before precinct voters at the November 5, 2024 general election. Imposters submitted a timely local-liquor-option election petition to the board on Form 5-R as prescribed by the Ohio Secretary of State. As submitted by Imposters, the petition appeared as follows:

---

1. At the November 2023 general election, voters in Cleveland 03 Precinct B voted to allow Sunday sales at Imposters' location.

Form No. 5-R Prescribed by the Ohio Secretary of State (03-22)

## Local Liquor Option Election Petition

A petition to submit the question of the sale of beer, wine and mixed beverages, or spirituous liquor at a particular location within a precinct if the petitioner for the local option election is an applicant for the issuance or transfer of a liquor permit at, or to, a particular location within a precinct; or the holder of a permit at a particular location within the precinct; or a person who operates or seeks to operate a liquor agency store at a particular location within the precinct; or the designated agent of one of these persons.

R.C. 3501.38, 3501.382, 3503.06, 4301.323, 4301.333 and 4301.355

### Instructions

1. Either or both of the two questions set forth below may be submitted.
2. The petition section for any question to be submitted must be completed **before** any signature may be obtained on this petition.
3. The petition must be filed with the Board of Elections of the county in which the precinct is located, not later than 4 p.m. of the 90th day before the day of a general or primary election, except as follows:

   If the petition is being filed with respect to a previous local option election, the petitioner must satisfy both of the following conditions:

   a. No later than 29 days after the Ohio Division of Liquor Control receives final notice of the result of such election affecting the liquor permit holder, the petition must be filed with the Board of Elections in which such precinct is located; **and**

   b. No later than 29 days after the Ohio Division of Liquor Control receives final notice of the result of such election affecting the liquor permit holder, a copy of the petition with the Board of Elections' file stamp must be filed with the Superintendent of the Division of Liquor Control.

To the Board of Elections of _____ Cuyahoga _____ County, Ohio:

Name of County Board of Elections

We, the undersigned, qualified electors of the precinct hereinafter defined, respectfully petition that you submit to the electors of such precinct the following question(s):

(1) Shall the sale of _____ wine and spirituous liquor _____ be

Insert above one or more of the following three choices: "beer"; "wine and mixed beverages"; or "spirituous liquor"

permitted by _____ Imposters LTD _____

Insert name (as submitted to Division of Liquor Control) of liquor permit holder or applicant, or liquor agency store, including, if applicable, trade or fictitious name under which applicant for, or holder of, liquor permit or liquor agency store either does, or intends to do, business at the particular location

a(n) _____ applicant for a D-3 and D-6 liquor permit and _____ a _____ holder of a D-1 and D-2 _____ liquor permit(s),

Insert "an applicant for" or "a holder of" or "an operator of"   Insert name of the type of liquor permit or permits, or if appropriate, "liquor agency store for the State of Ohio"

authorizing _____ on/off-premise sales _____

Insert brief description of the type of sales authorized by the permits listed above, such as "on-premise sales," "off-premise sales," or "on/off premise" sales

who is engaged in the business of _____ a performing arts theater _____

Insert general nature of the business in which liquor permit holder or applicant is engaged, or will be engaged, at the particular location

at _____ 4828 Lorain Avenue, Cleveland, Ohio 44102 _____ in this precinct?

Insert address of the particular location within the precinct

As shown above, Imposters inserted "wine and spirituous liquor" on the first blank in paragraph (1). The instructions below the blank, however, indicated that the petitioner should "insert above one or more of the following three choices: 'beer'; 'wine and mixed beverages'; or 'spirituous liquor.' " (Boldface deleted.)

{¶ 10} Imposters' petition contained enough valid signatures of precinct electors to qualify the local liquor option for the ballot. However, on August 7, the board's manager of candidate and petition services, Brent Lawler, informed Imposters that the submitted petition was invalid because Imposters had inserted "wine and spirituous liquor" on the first blank in paragraph (1) of the petition form.

Lawler wrote in an email to Imposters that "[t]he type of sale 'wine' must also include 'mixed beverages' to be considered a valid submission." Thus, according to Lawler, Imposters should have inserted "wine and mixed beverages and spirituous liquor" on the blank at issue. In support of this position, Lawler included in his email the following quote from the Local Liquor Options Guide published by the secretary of state:

> "Wine and mixed beverages" is a single category, requiring BOTH wine and mixed beverages. Thus, [the] petition may request "beer and wine and mixed beverages" or "wine and mixed beverages and spirituous liquor," but NOT "beer and wine" or "beer and mixed beverages" or "mixed beverages and spirituous liquor."

Lawler informed Imposters that the local-liquor-option petition would be submitted to the board "for removal from the ballot" at the board's August 19 meeting.

{¶ 11} Imposters appeared at the board's August 19 meeting to argue against the rejection of its local-liquor-option petition. Imposters acknowledged that the petition form required it to insert "beer, wine and mixed beverages, or spirituous liquor" on the first blank in paragraph (1) of Form 5-R. However, Imposters took the position that an applicant may choose any one or more of beer, wine, mixed beverages, or spirituous liquor to which R.C. 4301.355(B)(1) applies "and put that [combination] on the ballot." In other words, Imposters argued that it did not have to list "wine and mixed beverages" on the blank at issue. Imposters further argued that it did not need to include "mixed beverages" on the petition because it already has a D-2 permit allowing it to sell mixed beverages. To the extent that the secretary of state's guide dictated otherwise, Imposters argued that the secretary's interpretation was contrary to R.C. 4301.355(B)(1).

6

**{¶ 12}** The board voted unanimously to reject Imposters' petition and to not certify Imposters' local liquor option for the November 5, 2024 general-election ballot.

### D.  Imposters Files this Action

**{¶ 13}** On September 5, 2024, more than two weeks after the board rejected its petition, Imposters filed this expedited election action.  Imposters seeks a writ of mandamus ordering the board to certify its local-liquor-option question for placement on the Cleveland 03 Precinct B, November 5, 2024 general-election ballot.  The board timely answered the complaint, admitting most of the material facts but denying that Imposters is entitled to relief.  The board also asserted as an affirmative defense that Imposters' complaint is barred by the doctrine of laches.

## II.  ANALYSIS

### A.  Laches

**{¶ 14}** In election cases, a relator must act with the utmost diligence.  *State ex rel. Syx v. Stow City Council*, 2020-Ohio-4393, ¶ 11.  Laches may bar relief if there is (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.  *State ex rel. Carrier v. Hilliard City Council*, 2016-Ohio-155, ¶ 8.

**{¶ 15}** In this case, the board rejected Imposters' local-liquor-option petition on August 19.  But Imposters waited 17 days until it filed this action on September 5, seeking extraordinary relief in mandamus.  This court has found a delay of this duration to be unreasonable in an expedited election case.  *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 1995-Ohio-269, ¶ 13.  And Imposters has given no reason why it waited 17 days to file suit.

**{¶ 16}** Delay alone, however, is not enough to establish a laches defense.  *See id.* at 145.  When this court has found laches dispositive, it is generally because of "prejudice to the respondents in their statutory obligation to absentee voters to

have absentee ballots printed and ready for use." *State ex rel. Steele v. Morrissey*, 2004-Ohio-4960, ¶ 14. Thus, in *Steele*, this court rejected laches as a dispositive defense, noting that "the schedule for evidence and briefs in [that] case was completed *before* the passage of the absentee-ballot date." (Emphasis in original.) *Id.*

{¶ 17} In this case, the board contends that the 17-day delay is prejudicial because the board is required to begin distributing ballots under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") to eligible voters on September 20 and commence mailing absentee ballots to other eligible voters on October 8. And a directive from the secretary of state requires it to send a copy of each precinct's absentee ballot to the secretary of state by September 19. Moreover, the board states that it must "successfully complete logic and accuracy testing and give notice to its print vendor to print the ballots for the 2024 General Election by October 1, 2024." The procedure for this logic and accuracy testing will begin by September 20. Thus, says the board, a failure to resolve the issue whether Imposters' petition is valid by September 20 will prejudice its ability to timely finalize absentee ballots by October 8.

{¶ 18} Though Imposters' 17-day delay in filing this suit appears unreasonable under the circumstances of this case, we decline to deny the writ based on laches. The record before us does not establish the requisite prejudice to sustain a laches defense. Despite the delay, Imposters still brought this case far enough in advance of the board's October 1 deadline for completing all "logic and accuracy testing" for absentee ballots that this court can issue a decision in time for the board to complete its work. And as for the UOCAVA deadline, the board has not demonstrated prejudice arising from that looming date. The board does not state whether any UOCAVA ballots need to be ready for use by September 20. Insofar as the local-liquor-option question would be presented to the electors of

only one precinct in Cuyahoga County, it is not certain on the record before us that any overseas ballots are required.

*B. Mandamus*

{¶ 19} To obtain a writ of mandamus ordering placement of its local-liquor-option question on the November 5, 2024 general-election ballot, Imposters must establish by clear and convincing evidence that (1) it has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide it, and (3) it does not have an adequate remedy in the ordinary course of the law. *State ex rel. Brubaker v. Lawrence Cty. Bd. of Elections*, 2022-Ohio-1087, ¶ 9. With respect to the third element, Imposters lacks an adequate remedy in the ordinary course of the law because the November 5 election is little more than 40 days away. *See State ex rel. Lambert v. Medina Cty. Bd. of Elections*, 2023-Ohio-3351, ¶ 12 (the relator "lack[ed] an adequate remedy in the ordinary course of the law due to the proximity of the election" when the court issued its opinion on September 20, 2023, ahead of the November 7, 2023 election).

{¶ 20} As to the first two elements, this court must determine whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable law. *Brubaker* at ¶ 10. Imposters does not contend that the board engaged in fraud or corruption. Thus, Imposters' entitlement to relief turns on whether the board abused its discretion or acted in clear disregard of the law.

{¶ 21} The resolution of this case turns on whether Imposters was required to insert "wine and mixed beverages and spirituous liquor" on the first blank in paragraph (1) of Form 5-R for a local liquor option, even though Imposters already has a permit allowing it to sell mixed beverages. To resolve that question, Imposters points to R.C. 4301.355(B), which governs the form of ballots for the local liquor option that Imposters seeks to place before the voters in its precinct. That statute provides:

At the election, one or more of the following questions, as designated in a valid petition, shall be submitted to the electors of the precinct:

(1) "Shall the sale of _____ (*insert beer, wine and mixed beverages, or spirituous liquor*) be permitted by _____ (insert name of applicant, liquor permit holder, or liquor agency store, including trade or fictitious name under which applicant for, or holder of, liquor permit or liquor agency store either intends to do, or does, business at the particular location), an _____ (insert "applicant for" or "holder of" or "operator of") a _____ (insert class name of liquor permit or permits followed by the words "liquor permit(s)" or, if appropriate, the words "liquor agency store for the State of Ohio"), who is engaged in the business of _____ (insert general nature of the business in which applicant or liquor permit holder is engaged or will be engaged in at the particular location, as described in the petition) at _____ (insert address of the particular location within the precinct as set forth in the petition) in this precinct?"

(Emphasis added.)

{¶ 22} Election laws are mandatory and require strict compliance; substantial compliance is acceptable only when an election provision expressly states that it is. *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 2002-Ohio-4194, ¶ 49. In this case, Imposters does not argue for substantial compliance. Rather, it argues that R.C. 4301.355(B) did *not* require its petition to include "mixed beverages" as a subject of the proposed local liquor option. That is so, argues Imposters, because it already has a permit to sell mixed beverages at its location. Thus, Imposters argues that the language "wine

and spirituous liquors" on its petition is accurate and would be valid ballot language under R.C. 4301.355(B) because "wine and spirituous liquor were the only two types of beverages that remained dry at Imposters' location, and for which Imposters needed the voters to approve such sales." Nothing in R.C. 4301.355(B)(1), argues Imposters, prohibited it from filling in the blank on the petition Form 5-R with the phrase "wine and spirituous liquor."

{¶ 23} The board disputes Imposters' interpretation, arguing that we must look not only to R.C. 4301.355(B) but also to R.C. 4301.333. The latter statute provides that a local-liquor-option petition "shall contain" several disclosures, including:

> The address *and proposed use* of the particular location within the election precinct to which the results of the question or questions specified in section 4301.355 of the Revised Code shall apply. For purposes of this division, "use" means all of the following:
>
> (a) The type of each liquor permit applied for by the applicant or held by the liquor permit holder *as described in sections 4303.11 to 4303.183 of the Revised Code*, including a description of the type of beer or intoxicating liquor sales *authorized by each permit as provided in those sections*.

(Emphasis added.) R.C. 4301.333(B)(3).

{¶ 24} The board argues that Imposters' petition did not strictly comply with R.C. 4301.333(B)(3)(a) because none of the permits "described in" R.C. 4303.11 to 4303.183 authorizes the sale of "wine and spirituous liquor." An examination of the relevant permit statutes shows that the board is correct in this regard. The liquor permits applicable to Imposters' proposed uses were a D-2

permit authorizing "wine and . . . mixed beverages," a D-3 permit authorizing "spirituous liquor," and a D-6 permit authorizing Sunday liquor sales. *See* R.C. 4303.14, 4303.15, and 4303.182. Thus, by pairing "wine and spirituous liquor" together on a petition form relating to its proposed use, Imposters was not describing a valid liquor permit that would authorize the sale of those categories of liquor together.

{¶ 25} For Imposters to comply with R.C. 4301.333(B)(3)(a), Imposters had to state in its Form 5-R petition that it was seeking voter approval of the sale of "wine and mixed beverages" under its D-2 permit in combination with "spirituous liquor" under a D-3 permit—i.e., "wine and mixed beverages and spirituous liquor." In other words, the proposed use of its D-2 permit that Imposters needed to clearly submit to precinct voters was for the sale of wine *and* mixed beverages *together*—a change from Imposters' current authorization under its D-2 permit to sell only mixed beverages and not wine.

{¶ 26} The board further contends that this understanding of strict compliance with R.C. 4301.333(B)(3)(a) is bolstered by the ballot language specified in R.C. 4301.355(B)(1), which expressly states that the question posed to the voters should state whether the sale of beer, wine and mixed beverages, or spirituous liquor should be permitted at a particular location within a precinct. R.C. 4301.333(B)(3)(a) combined with R.C. 4301.355(B)(1), the board says, shows that Imposters' petition language of "wine and spirituous liquor" is invalid.

{¶ 27} The board did not abuse its discretion or act in clear disregard of applicable law in rejecting Imposters' petition based on this rationale. R.C. 4301.333(B) sets forth the requirements of a local-liquor-option petition for an election under R.C. 4301.355(B)(1). This court has stated that "[o]ne of these requirements is that the petition contain a notice that the petition is for the submission of *one or more of the questions in R.C. 4301.355*." (Emphasis added.) *State ex rel. Stevens v. Geauga Cty. Bd. of Elections*, 2000-Ohio-66, ¶ 7. The

12

questions in R.C. 4301.355 are worded in specific terms. In this case, the question that must be presented to the precinct voters under R.C. 4301.355(B)(1) is: "Shall the sale of _____ (insert beer, *wine and mixed beverages*, or spirituous liquor) be permitted by [Imposters] . . . ?" (Emphasis added.) As the board determined, the prescribed ballot language contemplates the question to be whether retail sales of "wine and mixed beverages" *together* should be approved by the voters within the precinct. Indeed, this is consistent with the statutory definition of a D-2 permit authorizing the sale of wine *and* mixed beverages together at the same location. *See* R.C. 4303.14(A). There is no mechanism in the statutory ballot language for voters to consider "wine" only or "wine and spirituous liquor" without "mixed beverages." By omitting "mixed beverages" from its petition, Imposters was not giving precinct voters the opportunity to consider the issue whether the sale of "wine and mixed beverages" together should be permitted at Imposters' location.

{¶ 28} We recognize that precinct voters in a previous local-option election were apparently allowed to approve the sale of mixed beverages yet reject the sale of wine at Imposters' location. For this reason, Imposters has a D-2 permit that does not appear to be contemplated by current law: its permit allows the sale of mixed beverages but forbids the sale of wine, even though a D-2 permit typically allows the sale of both. Imposters believes that its status as a holder of a D-2 permit for mixed beverages means that it did not have to list "mixed beverages" on its local-liquor-option petition. The statutory language, however, states otherwise. R.C. 4301.355(B)(1) requires the ballot language to state that voters are being asked to approve sales of "beer, *wine and mixed beverages*, or spirituous liquors." (Emphasis added.)

{¶ 29} The fact that precinct electors may have been allowed to consider (and reject) the sale of wine by itself in a previous local-option election does not mean that the same should be allowed under the current statutory language. To adopt Imposters' argument would require us to create an exception to Ohio's liquor

laws that the General Assembly did not prescribe. The General Assembly knows how to draft laws that contain exceptions; we will not create one when the General Assembly did not do so. *See Pauley v. Circleville*, 2013-Ohio-4541, ¶ 38.

### III. CONCLUSION

**{¶ 30}** For the foregoing reasons, the board did not abuse its discretion or act in clear disregard of applicable law in declining to certify Imposters' local-liquor-option petition for the November 5, 2024 general-election ballot. We therefore deny the writ.

Writ denied.

_____

Walter Haverfield, L.L.P., and John N. Neal, for relator.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mark R. Musson, Assistant Prosecuting Attorney, for respondent.

_____