[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pennington v. Bivens*, Slip Opinion No. 2021-Ohio-3134.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3134

[THE STATE EX REL.] PENNINGTON ET AL. *v.* BIVENS, CITY ATTY., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pennington v. Bivens*, Slip Opinion No. 2021-Ohio-3134.]**

*Elections—Mandamus—Writ of mandamus sought to compel city attorney to certify sufficiency of petitioners' zoning-amendment referendum petition—Procedures for circulating referendum or initiative petition set forth in R.C. 731.28 through 731.41 do not apply to municipality that has adopted its own charter containing an initiative and referendum provision—Because city had adopted a charter containing an initiative and referendum provision, petitioners were not required to comply with R.C. 731.32's requirement to submit ordinance to city auditor before circulating referendum petition—City attorney abused his discretion in rejecting petition on the ground that petitioners failed to comply with R.C. 731.32— Writ granted in part.*

(No. 2021-1030—Submitted August 31, 2021—Decided September 13, 2021.)

IN MANDAMUS.

———————————

**KENNEDY, J.**

{¶ 1} In this expedited election case, relators, Lana Pennington, Holly Pennington, Cynthia McIntire, Lisa Cotterman, and Anna Miller, the five members of a petition committee (collectively, "petitioners"), seek a writ of mandamus ordering respondent Whitehall City Attorney Michael T. Bivens or respondent Whitehall City Council to certify the sufficiency of a referendum petition for the rejection or approval of a zoning ordinance in the city of Whitehall. The petitioners also seek to compel the city council to submit the petition to Whitehall's electors at the November 2, 2021 general election.

{¶ 2} R.C. 731.41 states that the procedures for circulating a referendum or initiative petition provided in R.C. 731.28 through 731.41 do not apply to a municipality, such as the city of Whitehall, that has "adopt[ed] its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures." Therefore, Bivens abused his discretion in rejecting a referendum petition on the ground that the petitioners failed to comply with R.C. 731.32's requirement to submit a certified copy of the zoning ordinance to the city auditor before circulating their petition. We also decline to apply the equitable defense of laches. There is no equity in denying the preeminent constitutional right of referendum when respondents have not asserted any actual, material prejudice from the delay.

{¶ 3} For these reasons, we grant a writ of mandamus to compel Bivens to certify the sufficiency of the petition to the clerk of the Whitehall City Council forthwith so that the council may refer the zoning amendment to the electors at the November 2, 2021 general election. However, we deny petitioners' request for attorney fees.

**Facts and Procedural History**

{¶ 4} On June 16, 2021, Whitehall's mayor signed an ordinance changing the zoning classification of several parcels from "R-3 Residential District" and "General Commerce District" to "A-2 Apartment District." On June 24, the petitioners filed an uncirculated referendum petition along with a certified copy of the ordinance with Bivens, the city attorney. However, the certified copy of the ordinance, which the petitioners had obtained from the clerk of the city council, did not include the ordinance's exhibits.

{¶ 5} On July 1, after gathering signatures, the petitioners filed the petition with Bivens. He then delivered the petition to the Franklin County Board of Elections, which certified that the petition contained a sufficient number of valid signatures.

{¶ 6} On July 10, Bivens informed the petitioners that the petition was insufficient because it did not contain the full ordinance, which he said was required under section 15(a) of the Whitehall City Charter. *See* Whitehall City Charter, Section 15(a) (requiring that initiative petitions include "the proposed ordinance or resolution in full"); Whitehall City Charter, Section 16(b) (providing that "referendum petitions shall be prepared and filed in the manner and form prescribed * * * for an initiative petition for an ordinance or resolution"). He also told the petitioners that they had "failed to file a full-certified copy of the ordinance prior to circulation as required by Ohio Revised Code 731.32." That statute provides in part that "[w]hoever * * * files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with *the city auditor*." (Emphasis added.) R.C. 731.32. Bivens notified the petitioners that the city charter provides for a limited right to file an amended petition within ten days. *See* Whitehall City Charter, Sections 15(d) and 16(b).

{¶ 7} On July 15, the petitioners filed a copy of an uncirculated amended petition along with a certified copy of the ordinance (this time including its exhibits) with Bivens, and on July 19 they filed the circulated amended petition with him. Bivens sent the amended petition to the board of elections, which found that it contained a sufficient number of valid signatures.

{¶ 8} Nine days later, on July 28, Bivens notified the petitioners that the amended petition was insufficient because they had not complied with R.C. 731.32. On August 11, petitioner Lana Pennington e-mailed Bivens asking him to clarify his basis for rejecting the petition. Bivens replied, explaining that in his July 10 and July 28 letters to the petitioners, he had "referenced and noticed the insufficiency of the referendum petitions due to the committee's failure to file pre-circulated certified copies pursuant to ORC 731.32. This statute states in relevant part that the pre-circulated certified copies of the referendum petitions must be filed with the Auditor."

{¶ 9} On August 18, the petitioners filed this original action seeking to compel Bivens or the city council to certify the sufficiency of the petition and to compel the city council to submit the measure to the electors at the November 2, 2021 general election. The petitioners maintain that they were not required to file a certified copy of the ordinance with the city auditor before circulating the petition, because section 14 of the city charter provides that "[a]ll petitions required in the initiative or referendum of ordinances and resolutions shall be filed with the City Attorney."

**Law and Analysis**

*Mandamus*

{¶ 10} To be entitled to a writ of mandamus, the petitioners must establish a clear legal right to the requested relief, a clear legal duty on the part of a respondent to grant the relief, and the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140

4

Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 17. Respondents do not dispute that the proximity of the November election precludes an adequate remedy at law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18. To prevail, the petitioners must show that Bivens abused his discretion in finding that the petition was insufficient. *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 232, 685 N.E.2d 754 (1997).

{¶ 11} Article II, Section 1f of the Ohio Constitution states, "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." We have described Article II, Section 1f as "a delegation of power to the Legislature to provide how the initiative and referendum powers that were reserved to the people of each municipality may be applied." *Youngstown v. Craver*, 127 Ohio St. 195, 202-203, 187 N.E. 715 (1933). In addition, we have recognized that "charter 'law' under the 'homerule' provisions of the Constitution" may also provide for the exercise of the rights to initiative and referendum. *State ex rel. Bramblette v. Yordy*, 24 Ohio St.2d 147, 149, 265 N.E.2d 273 (1970). In the event of a conflict with state law, the charter prevails on matters of local self-government, including the conduct of local elections. Article XVIII, Section 3, Ohio Constitution; *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections*, 62 Ohio St.3d 17, 19, 577 N.E.2d 645 (1991).

{¶ 12} The General Assembly has provided a default procedure for exercising the rights of initiative and referendum in enacting R.C. 731.28 et seq. These statutes include R.C. 731.32, which states in part that "[w]hoever * * * files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk." But the General Assembly also provided that "Sections 731.28 to 731.41, inclusive, of the Revised Code *do not apply* to any municipal

corporation which adopts its own charter containing an initiative and referendum provision for its own ordinances and other legislative measures." (Emphasis added.) R.C. 731.41.

{¶ 13} Whitehall's city charter contains an initiative and referendum provision. *See* Whitehall City Charter, Section 15 (initiative petitions) and Section 16 (referendum petitions). Therefore, by the express terms of R.C. 731.41, the precirculation filing requirement imposed by R.C. 731.32 does not apply to the referendum petition submitted in this case.

{¶ 14} Respondents maintain that the Whitehall charter incorporates R.C. 731.32 by reference through section 79 of the charter, which provides that "[a]ll general laws of the State applicable to municipal corporations, now or hereafter enacted and which are not in conflict with the provisions of this Charter, or with ordinances or resolutions hereafter enacted by City Council, shall be applicable to this City." They point out that "the Whitehall City Charter is silent with respect to precirculation requirements," and "[i]n interpreting municipal charters that are similarly silent with respect to precirculation requirements though also contain provisions that incorporate all non-conflicting state laws, this Court has repeatedly held that R.C. 731.32 applies to such municipalities."

{¶ 15} We acknowledge that we have said that R.C. 731.32 does not conflict with a municipality's initiative and referendum provision when the charter incorporates general law by reference and does not impose (i.e., is silent regarding) any precirculation requirement. *E.g., State ex rel. Columbus Coalition for Responsive Govt. v. Blevins*, 140 Ohio St.3d 294, 2014-Ohio-3745, 17 N.E.3d 578, ¶ 7; *State ex rel. Julnes v. S. Euclid City Council*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, ¶ 13; *State ex rel. Bogart v. Cuyahoga Cty. Bd. of Elections*, 67 Ohio St.3d 554, 555, 621 N.E.2d 389 (1993); *State ex rel. Citizens for a Better Beachwood v. Cuyahoga Cty. Bd. of Elections*, 62 Ohio St.3d 167, 168-170, 580 N.E.2d 1063 (1991).

{¶ 16} This line of cases sprung from our decision in *State ex rel. Nimon v. Springdale*, 6 Ohio St.2d 1, 215 N.E.2d 592 (1966). In that case, the municipal charter had three provisions that departed from the statutory procedures provided by R.C. 731.28 et seq., and it also provided that " 'all other matters relating to the question of the exercise of the power of referendum shall be regulated by the provision of the Revised Code of Ohio relating to referendum petitions,' " *Nimon* at 8. This charter language therefore specifically incorporated all the requirements set forth in R.C. 731.28 et seq. for circulating a referendum petition except where the charter expressly stated otherwise. That is, the Springdale Village Charter provided that any gap left in the charter—the "silence"—would be filled by the default statutory procedures. In this way, it had overridden R.C. 731.41 by expressly stating that statutes like R.C. 731.32 would be incorporated into the charter. *Nimon* at 8.

{¶ 17} Based on this language, we held:

> Where the charter of a municipal corporation provides for certain features of the initiative and referendum differing from the statutory provisions with relation thereto, and provides further that 'all other matters relating to the question of the exercise of the power of referendum shall be regulated by the provisions of the Revised Code of Ohio relating to referendum petitions,' but is silent with respect to language to be contained on a referendum petition or with respect to filing such petition with a village official prior to its circulation, such matters are controlled by Sections 731.32 and 731.33 of the Revised Code, and Section 731.41, Revised Code, is inapplicable.

*Id.* at paragraph five of the syllabus.

**{¶ 18}** We subsequently applied this holding to charters containing different language that did not expressly override R.C. 731.41. In *Citizens for a Better Beachwood*, the city charter stated that " '[t]he powers of this Municipality may also be exercised, except as a contrary intent appears in this Charter or in the enactments of the Council conformable hereto, in such manner as may now or hereafter be provided by the general law of Ohio.' " 62 Ohio St.3d at 168, 580 N.E.2d 1063. Although this charter language was unlike the initiative and referendum provision in *Nimon*, which had specifically incorporated the default statutory referendum procedures that did not conflict with the charter's express provisions, we nonetheless applied the rule from *Nimon* and held that when the charter is silent on any precirculation requirements, nothing in the charter conflicts with R.C. 731.32 and the statute controls, *Citizens for a Better Beachwood* at 170.

**{¶ 19}** Since *Citizens for a Better Beachwood* was decided, we have continued to hold that notwithstanding R.C. 731.41, " '[t]he statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41' *does* apply to 'municipalities where the charter incorporates general law by reference, except where the statutory procedure [expressly] conflicts with other charter provisions.' " (First brackets and emphasis sic.) *State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 2018-Ohio-3609, 119 N.E.3d 1238, ¶ 16, quoting *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 477, 764 N.E.2d 971 (2002) (lead opinion).

**{¶ 20}** However, these holdings conflict with the plain language of R.C. 731.41. When a municipality has adopted a charter form of government that includes an initiative and referendum provision, the default statutory provisions enacted in R.C. 731.28 et seq. do not apply. R.C. 731.41. Therefore, a charter provision that adopts all general laws applicable to municipalities that are not in conflict with the charter does not incorporate by reference a statute that R.C. 731.41 expressly says does *not apply* to the municipality. Here, section 79 of the Whitehall City Charter

incorporates only those general laws that are *applicable* to the municipality. *Citizens for a Better Beachwood* and its progeny do not provide the controlling rule of decision.

{¶ 21} The Whitehall City Charter also incorporates only those general laws that do not conflict with the charter's provisions. The test for determining whether state and local laws conflict is " 'whether the ordinance permits or licenses that which the statute forbids * * *, and vice versa.' " (Ellipsis sic.) *Ohioans for Concealed Carry, Inc. v. Clyde*, 120 Ohio St.3d 96, 2008-Ohio-4605, 896 N.E.2d 967, ¶ 26, quoting *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923), paragraph two of the syllabus. As respondents acknowledge, R.C. 731.32 has a requirement to file the ordinance to be referred to the city auditor before circulating any petitions, while the charter's initiative and referendum provisions do not. *See* R.C. 731.32; Whitehall City Charter, Sections 15 and 16(b). Put differently, the charter permits a person seeking to refer local legislation to the voters to collect signatures without first submitting the ordinance to the city auditor. The statute, on the other hand, forbids circulating the same petition without first submitting it to the auditor. Because the charter allows that which the statute prohibits, they conflict, and the charter controls.

{¶ 22} The language of the Whitehall City Charter leaves no room for statutes to overlay additional procedures on top of those adopted by the voters of Whitehall. Section 14 of the charter states that "ordinances and resolutions adopted by Council shall be subject to referendum to the extent and *in the manner provided in the Charter*." (Emphasis added.) This language makes the default procedures established in R.C. 731.28 through 731.41 inapplicable to the city of Whitehall, because the charter—and the charter only—provides the manner for circulating referendum petitions. The charter does not impose any requirement to submit to the city auditor the ordinance that the petitioner seeks to refer to the people. Rather, the process in the charter provides for referendum petitions to be filed with the city

attorney *after* they have been circulated. *See* Whitehall City Charter, Sections 15(a) through (c) and 16(b).

**{¶ 23}** Bivens therefore abused his discretion in determining that the petitioners' referendum petition was insufficient because they had not complied with R.C. 731.32.

*Laches*

**{¶ 24}** Respondents argue that we should deny the writ based on the doctrine of laches, criticizing the petitioners' 21-day delay in bringing this mandamus action. Laches may bar relief in an election-related matter if the party seeking relief has failed to act with the " 'utmost diligence.' " *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7.

**{¶ 25}** The elements of a laches defense are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

**{¶ 26}** "[A] party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay." *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 10. And the prejudice must be material before laches will bar relief. *State ex rel. Rife v. Franklin Cty. Bd. of Elections*, 70 Ohio St.3d 632, 635, 640 N.E.2d 522 (1994); *see also Smith v. Smith*, 168 Ohio St. 447, 455, 156 N.E.2d 113 (1959) ("in order to successfully prosecute a claim of laches, the person asserting the claim must show that he has been materially prejudiced by the delay of the adverse party in asserting his rights").

**{¶ 27}** The sole assertion of prejudice made in this case is that petitioners' "unreasonable delay not only caused this matter to become an expedited election

matter under S.Ct.Prac.R. 12.08, but it also resulted in the Court having to issue a separate scheduling order requiring Respondents to file their Answer *even earlier* than the date contemplated by the Court's default expedited briefing schedule." (Emphasis sic.)

{¶ 28} However, a laches defense "rarely prevails in election cases." *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8. "[C]ases in which laches is dispositive generally involve prejudice to the respondents in their statutory obligation to absentee voters to have absentee ballots printed and ready for use." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 14. This case, however, has been fully briefed well in advance of the deadline for preparing absentee ballots as required by the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20302(a). Pursuant to R.C. 3511.04(B), that deadline is 45 days before the general election, which in this case is September 17, 2021. Accordingly, because there has been time to decide this case on the merits without impeding the Franklin County Board of Elections in its duty to prepare and mail absentee ballots, the purpose of S.Ct.Prac.R. 12.08 "to give the Supreme Court adequate time for full consideration of the case" has been satisfied, notwithstanding any delay in the filing of the action.

{¶ 29} Respondents do not provide any concrete details as to how their preparation and defense of this case have been materially affected. Importantly, this case presents relatively straightforward issues regarding whether the petition is sufficient and valid. None of these issues has required extensive discovery to defend, and there is no indication that respondents were prevented from thoroughly presenting the evidence, authority, and argument supporting their position in the time frame allowed. And although respondents complain of the shorter time frame imposed by our scheduling order, they were able to file their answer three days early.

{¶ 30} Instead, respondents rely on *Citizens for Responsible Green Govt. v. Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 25, for the

proposition that unreasonable delay in filing a mandamus action that causes a case to be expedited under S.Ct.Prac.R. 12.08 is presumptively prejudicial. However, four justices declined to join that per curiam opinion; therefore, that case is not binding on this court. *See Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 29.

{¶ 31} Nonetheless, we have sometimes indicated that the element of prejudice may be satisfied when the delay causes the case to become an expedited election case pursuant to S.Ct.Prac.R. 12.08, which restricts the time a respondent has to prepare and defend the case. *E.g.*, *State ex rel. Syx v. Stow City Council*, 161 Ohio St.3d 201, 2020-Ohio-4393, 161 N.E.3d 639, ¶ 14; *Duclos*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, at ¶ 11; *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 11; *State ex rel. Chillicothe v. Ross Cty. Bd. of Elections*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 17; *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 19; *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 18. But in none of those cases did we conclude that laches barred relief based solely on a presumption that the procedural burdens imposed by expedited briefing were prejudicial. In *Syx*, the relators delayed filing until "so close to the [federal] statutory deadlines for finalizing ballots" that it transformed an expedited elections case into an emergency. *Id.* at ¶ 15. Yet even then, we still proceeded to address the merits of the action, *id.* at ¶ 9, 18-28, and therefore our discussion of laches was ultimately unnecessary in deciding to deny the writ. Moreover, the majority in *Syx* inadvertently cited the language in *Citizens for Responsible Green Govt.* referring to a presumption of prejudice as a holding of the court, *Syx* at ¶ 14, when it was not—as stated, four justices did not join the opinion in *Citizens for Responsible Green Govt.* In the other cases, the deadline for preparing ballots had already passed or the laches defense did not apply, so any recognition of a presumption of prejudice was dicta only. In short, these cases do not show that a

writ should be denied in an election case on the sole basis of a presumption that the delay caused the action to become expedited, and we decline to do so today. There is no equity in denying the preeminent constitutional right of referendum to the people of Whitehall when the respondents have not shown actual, material prejudice from any delay.

*Attorney Fees*

{¶ 32} The petitioners also seek attorney fees in their prayer for relief. "[T]he general rule is that absent a statute allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed acted in bad faith." *State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 55. The petitioners have not established bad faith. They instead suggest that they are entitled to fees as a successful party in a taxpayer action under R.C. 733.59 and 733.61.

{¶ 33} R.C. 733.59 provides:

> If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. Any taxpayer of any municipal corporation in which there is no village solicitor or city director of law may bring such suit on behalf of the municipal corporation. No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding.

{¶ 34} R.C. 733.61 allows a court, in its discretion, to award reasonable attorney fees to a successful taxpayer. *State ex rel. Commt. for the Charter Amendment Petition v. Avon*, 81 Ohio St.3d 590, 595, 693 N.E.2d 205 (1998).

{¶ 35} Generally, when this court has awarded attorney fees under R.C. 733.61, it was because the respondent's actions were not reasonably supported by law. *See State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 46; *Avon* at 595-596. However, our precedent, including *Columbus Coalition for Responsive Govt.* and *Citizens for a Better Beachwood*, lent support to Bivens's position that the petitions were not sufficient because the petitioners failed to comply with R.C. 731.32's requirement to file the certified ordinance with the city auditor before circulating the petition. We therefore deny the request for attorney fees.

## Conclusion

{¶ 36} We grant a writ of mandamus to compel Bivens to certify forthwith the sufficiency of the petition to the clerk of the city council so that council may refer the zoning amendment to the electors at the November 2, 2021 general election.

Writ granted in part.

FISCHER, DEWINE, and STEWART, JJ., concur.

O'CONNOR, C.J., and DONNELLY and BRUNNER, JJ., concur in judgment only.

————————————

Shane W. Ewald, L.L.C., and Shane W. Ewald; and The Law Office of Tricia A. Sprankle and Tricia A. Sprankle, for relators.

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Derek S. Clinger, for respondents.

————————————