[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sanduskians for Sandusky v. Sandusky,* Slip Opinion No. 2022-Ohio-3362.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3362

THE STATE EX REL. SANDUSKIANS FOR SANDUSKY ET AL. *v.* THE CITY OF SANDUSKY ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sanduskians for Sandusky v. Sandusky,* Slip Opinion No. 2022-Ohio-3362.]

*Elections—Mandamus—Writ of mandamus sought to compel city commission to certify charter-amendment petition for a vote at the November 8, 2022 general election—R.C. 731.31 is inapplicable to municipal charter-amendment petition unless municipal charter incorporates R.C. 731.31 into city's charter-amendment process—Because city has not incorporated R.C. 731.31 into its charter-amendment process, city commission and city law director erred in finding petition invalid for failing to comply with R.C. 731.31's full-text requirement—City commission ordered to enact ordinance providing for submission of proposed charter amendment to electors and to submit matter to a special election within time parameters set out in city charter and Ohio Constitution—Limited writ granted.*

(No. 2022-1103—Submitted September 19, 2022—Decided September 23, 2022.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relators, Sanduskians for Sandusky and Craig McCloskey II, ask for a writ of mandamus ordering respondents—the city of Sandusky, Sandusky Law Director Brendan Heil, and Sandusky City Commission members Richard Brady, Dennis Murray, Blake Harris, Mike Meinzer, Steve Poggiali, Wes Poole, and Dave Waddington (collectively "city respondents")—to certify a charter-amendment petition for a vote by Sandusky's electors at the November 8, 2022 general election. Relators also ask for a writ of mandamus ordering respondent Erie County Board of Elections to place the proposed charter amendment on the November 8, 2022 general-election ballot. Finally, relators seek an award of attorney fees under R.C. 733.61 because McCloskey is a taxpayer who initiated this action as a taxpayer under R.C. 733.59 after Heil refused to do so.

{¶ 2} We grant a limited writ ordering the city-commission members to enact an ordinance providing for submission of the proposed charter amendment to Sandusky's electors at a special election to take place within the time parameters set forth in Section 82 of the Sandusky Charter and Article XVIII, Section 8 of the Ohio Constitution. This limited writ is conditioned on the Erie County Board of Elections certifying that the charter-amendment petition contains enough valid signatures to qualify for submission to the electors under Section 82 of the Sandusky Charter and Article XVIII, Section 9 of the Ohio Constitution. We deny relators' request for attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} On or about August 3, 2022, Sanduskians for Sandusky filed with the city a charter-amendment petition containing more than 600 signatures. The petition proposed to amend Section 25 of the city's charter. The full text of the proposed amendment was printed on each part-petition:

Be it Ordained by the Electors of the City of Sandusky.

An Amendment to Charter Section 25-Expenditures.

Amending Section 25 Paragraph 4 to read as follows:

Real property owned by the City, with the exception of existing or future park property owned by the City, may be sold or leased by the City with competitive bidding. Transparent negotiations for sale or lease of City property, by the City Manager, are required.

The City Manager and City Commission shall not approve the sale, lease or private development on existing or future park property, in whole or part thereof, including park property under lease during the circulating of this Charter Amendment process, without approval by a majority of the electors of the City voting on the question at a general election. This Charter Amendment shall take effect and be in force from and after the earliest date allowed by law.

Sandusky Charter, Section 25 currently states:

S 25 EXPENDITURES.

Until otherwise provided by the City Commission, the City Manager shall act as the purchasing agent for the City, by whom all purchases shall be made, and who shall approve all vouchers for the payment of the same. Such purchasing agent shall also conduct all sales of personal property which the City Commission may authorize to be sold as having become unnecessary or unfit for the City's use.

All purchases and sales shall conform to such regulations as the City may from time to time prescribe; but in either case, if an amount in excess of $1,000 is involved, competitive quotations shall

be obtained. When it is anticipated an expenditure will exceed $10,000, formal competitive bidding shall be required; no such expenditure shall be split up for the sole purpose of evading this requirement.

When purchases or sales are made on joint accounts of separate departments, the purchasing agent shall apportion the charge or credit to each department. He or she shall see to the delivery of supplies to each department, and take, and retain the receipt of each department therefor.

Real property owned by the City may be sold or leased by the City without the need for competitive bids. Negotiations for the sale or lease of City property are permissible, where deemed appropriate by the City Manager, for the benefit of the City.

Competitive bidding shall not be required where the purchase consists of supplies, a replacement part or supplemental parts, or services for products, equipment or property owned or leased by the City and the only source of supply for such supplies, parts or services is limited to a single provider.

When an expenditure, other than the compensation of persons employed by the City, exceeds $10,000, such expenditure shall first be authorized and directed by ordinance or resolution of the City Commission, and no contract involving an expenditure in excess of such sum shall be made or awarded, except upon approval of the City Commission.

(Capitalization and underlining sic.)

{¶ 4} Upon receipt of the charter-amendment petition, city law director Heil determined that it did not include a full and correct copy of the title or text of

Section 25 of the city charter. Heil further determined that the petition would be misleading to the city's electors if placed on the ballot because it offers no guidance on what, if any, portions of existing Section 25 would be repealed or replaced.

{¶ 5} On August 8, the city commission discussed the petition at its regularly scheduled meeting.[1] Heil advised the commission that the petition did not satisfy the requirements of Ohio law. The commission did not certify the petition to the Erie County Board of Elections for placement on the general-election ballot.

{¶ 6} Despite his advice to the commission, Heil forwarded the petition to the board of elections solely for verification of signatures. The board of elections verified that the petition contains 466 valid signatures, which relators say is enough to qualify the proposed charter amendment for placement on the ballot.

{¶ 7} On August 24, McCloskey delivered a letter to Heil, requesting under R.C. 733.58 and 733.59 that Heil commence a mandamus action to compel the city commissioners to enact an ordinance to place the proposed charter amendment on the November 8 ballot.[2] Heil informed McCloskey's counsel that he would not initiate a mandamus action against the city commission.

{¶ 8} Relators commenced this expedited election action on September 8. They ask this court to issue a writ of mandamus (1) ordering city respondents to "forthwith certify" the charter-amendment petition so that the proposed amendment can be submitted to the electors of the city and (2) ordering the board of elections to place the proposed charter amendment on the November 8 general-election ballot. Relators also demand an award of attorney fees under R.C. 733.61. We set

---

1. Sandusky's legislative body is called the "City Commission." Sandusky Charter, Section 3.

2. R.C. 733.58 states, "In case an officer or board of a municipal corporation fails to perform any duty expressly enjoined by law or ordinance, the village solicitor or city director of law shall apply to a court of competent jurisdiction for a writ of mandamus to compel the performance of the duty." If a city law director fails to make the application requested, R.C. 733.59 authorizes a taxpayer to "institute suit in his own name, on behalf of the municipal corporation."

a schedule for submission of evidence and merit briefs that was more accelerated than the schedule set forth in S.Ct.Prac.R. 12.08. __ Ohio St.3d __, 2022-Ohio-3153, __ N.E.3d __. Relators and city respondents submitted evidence and merit briefs; the board of elections filed a notice of appearance of counsel but filed neither an answer to the complaint nor a merit brief. City respondents have also filed a motion to strike portions of relators' reply brief.

## II. OVERVIEW OF THE CHARTER-AMENDMENT PROCESS

{¶ 9} As authorized by Article XVIII, Section 7 of the Ohio Constitution, Sandusky has adopted a charter to govern the exercise of local self-government powers. Article XVIII, Section 9, which governs the charter-amendment process, provides:

> Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality by a two-thirds vote of the legislative authority thereof, and, upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, shall be submitted by such legislative authority. The submission of proposed amendments to the electors shall be governed by the requirements of section 8 as to the submission of the question of choosing a charter commission; and copies of proposed amendments may be mailed to the electors as hereinbefore provided for copies of a proposed charter, or pursuant to laws passed by the general assembly, notice of proposed amendments may be given by newspaper advertising. If any such amendment is approved by a majority of the electors voting thereon, it shall become a part of the charter of the municipality. A copy of said charter or any amendment thereto shall be certified to the

secretary of state, within thirty days after adoption by a referendum vote.

**{¶ 10}** If a petition proposing a charter amendment contains enough valid signatures, the municipal legislature "must 'forthwith' provide by ordinance for the submission of the proposed amendment to the electors." *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 3-4, quoting Article XVIII, Section 8, Ohio Constitution. And under Article XVIII, Section 8 of the Ohio Constitution, "[t]he ordinance must require that the matter be submitted at the next regular municipal election if one will occur no more than 120 days, and no less than 60 days, after passage of the ordinance." *Maple Hts.* at ¶ 5. If there is no election within that time frame, the municipal legislature must submit the question to the electors at a special election occurring within the same time frame. *Id.*

**{¶ 11}** Sandusky also has a charter-amendment provision in its charter, which is similar to Article XVIII, Section 9 of the Ohio Constitution and which contains the same time frame as Section 8 for submitting a proposed charter amendment to the voters. Sandusky's charter-amendment provision provides:

Amendments to this Charter may be submitted to the electors of the City by a 2/3 vote of the City Commission, and, upon petition signed by 10% of the electors of the City setting forth any such proposed amendment, shall be submitted by such City Commission. The ordinance providing for the submission of any such amendment shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than 60 nor more than 120 days after its passage; otherwise it shall provide for the submission of the amendment at a special election to be called and

held within the time aforesaid. Not less than 30 days prior to such election the Clerk of the City Commission shall mail a copy of the proposed amendment to each elector whose name appears upon the poll or registration books of the last regular municipal or general election. If such proposed amendment is approved by a majority of the electors voting thereon it shall become a part of the Charter at the time fixed therein.

Sandusky Charter, Section 82.

{¶ 12} To the extent the amendment procedures in Sandusky's charter conflict with the Ohio Constitution, the constitutional provisions will prevail. *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 30.

### III. MOTION TO STRIKE

{¶ 13} City respondents have filed a motion to strike those portions of relators' reply brief that refer to additional evidence that was not timely submitted. Relators appear to use this additional evidence to show that city respondents have not applied R.C. 731.28 to 731.41—Ohio's general statutes governing municipal initiative and referendum petitions—to assess the validity of previous charter-amendment petitions. Rather, relators contend that city respondents have evaluated charter-amendment petitions under only Section 82 of the Sandusky Charter and Article XVIII, Section 9 of the Ohio Constitution.

{¶ 14} We grant the motion to strike and, therefore, disregard the additional evidence referred to by relators in their reply brief. In an extraordinary-writ proceeding, this court's schedule for the presentation of evidence controls the timeliness of evidentiary submissions. *See State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, 172 N.E.3d 998, ¶ 14. If relators wished to

submit rebuttal evidence, they should have filed a motion for leave to do so. *See id.*

## IV. ANALYSIS

{¶ 15} To be entitled to a writ of mandamus, relators must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) the respondents are under a clear legal duty to perform the requested acts, and (3) there is no adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Because the November 8 election is less than two months away, relators lack an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18-19. The remaining elements of the analysis require this court to determine whether respondents engaged in fraud, corruption, or an abuse of discretion or acted in clear disregard of applicable law. *See State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 9.

{¶ 16} Relators do not allege fraud or corruption in this case. Thus, the dispositive issue is whether respondents abused their discretion or clearly disregarded applicable law.

### A. Does R.C. 731.31 Apply to a Petition to Amend the Sandusky Charter?

{¶ 17} A municipal legislature need not submit a proposed charter amendment to its electors "unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met." *Morris v. City Council of Macedonia*, 71 Ohio St.3d 52, 55, 641 N.E.2d 1075 (1994). A municipal legislature's inquiry is "limited to matters of form, not substance." *Id.*

{¶ 18} In this case, city respondents argue that relators' petition was insufficient as to form because it did not contain the full text of the proposed amendment to be submitted to the city's electors. In support of this position, city respondents cite R.C. 731.31, which states:

Any initiative or referendum petition may be presented in separate parts, but each part of any initiative petition shall contain a full and correct copy of the title and text of the proposed ordinance or other measure, and each part of any referendum petition shall contain the number and a full and correct copy of the title of the ordinance or other measure sought to be referred.

**{¶ 19}** Relators do not contend that their petition complies with R.C. 731.31. Rather, relators argue that R.C. 731.31 does not apply *at all* to their petition.

### 1. Estoppel Does Not Apply

**{¶ 20}** As an initial matter, city respondents argue that relators should be estopped from arguing that R.C. 731.31 does not apply to the charter-amendment petition. City respondents say that because relators induced them to evaluate the petition under R.C. 731.28 through 731.41 (Ohio's general laws applicable to initiative and referendum petitions), relators cannot now complain that these statutes do not apply to the petition. We reject city respondents' estoppel arguments.

**{¶ 21}** For judicial estoppel to apply, the argument in question must be inconsistent with one successfully and unequivocally asserted by the same party *in a prior court proceeding*. *See State ex rel. Motor Carrier Serv., Inc. v. Rankin*, 135 Ohio St.3d 395, 2013-Ohio-1505, 987 N.E.2d 670, ¶ 33; *see also Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. Here, even if we were to accept the premise that relators took the position in their communications with the city that the general municipal initiative and referendum statutes applied to their petition, they did not raise the argument *in a court proceeding*. Accordingly, the doctrine is inapplicable.

**{¶ 22}** "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994). "[E]quitable estoppel generally requires actual or constructive fraud." *Id.*; *see also Glidden Co. v. Lumbermens Mut. Cas. Co*., 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 53 ("Equitable estoppel does not apply when there is no actual or constructive fraud and no detrimental reliance"). City respondents cite no evidence of fraud, and they cite no case standing for the proposition that relators' *legal* argument is a proper predicate for equitable estoppel. To the contrary, equitable estoppel generally depends upon one party inducing another to believe certain *facts* exist, thereby leading to reasonable reliance on the part of the other party. *Chavis* at 34.

**{¶ 23}** Accordingly, relators are not estopped from arguing that the charter-amendment petition need not comply with R.C. 731.31.

*2. R.C. 731.31 Does Not Apply to the Charter-Amendment Petition*

**{¶ 24}** Relators argue that Section 82 of the Sandusky Charter governs the charter-amendment process and provides the sole basis for reviewing a charter-amendment petition's validity. And because the Sandusky Charter does not contain any provisions that require charter-amendment petitions to meet a requirement akin to R.C. 731.31's full-text requirement, they contend that Section 82 and R.C. 731.31 conflict and the Sandusky Charter must prevail. *See State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 31 (pertinent election statutes *not in conflict* with the Ohio Constitution or city charter apply to charter-amendment petitions).

**{¶ 25}** For their part, city respondents emphasize that Section 82 of the Sandusky Charter "does not contain a comprehensive set of provisions regulating what must be included in a petition for a Charter amendment." To fill those gaps,

city respondents argue that we must look to Sections 65 and 75 of the Sandusky Charter. Section 65, under the "Initiative and Referendum" title of the Sandusky Charter, states:

> S 65 STATE LAWS TO APPLY.
>
> The provisions for the initiative and referendum in municipal corporations, now in force or hereafter enacted, as prescribed by the general laws of the State, shall govern.

(Capitalization and underlining sic.)

{¶ 26} Later in the Sandusky Charter, under the title "Miscellaneous Provisions," Section 75 provides:

> S 75 GENERAL LAWS TO APPLY.
>
> All general laws of the State applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this Charter, or with ordinances or resolutions hereafter enacted [by] the City Commission, shall be applicable to this City; provided that nothing contained in this Charter shall be construed as limiting the power of the City Commission to enact any ordinance or resolution not in conflict with the constitution of the State or with the express provisions of this Charter.

(Capitalization and underlining sic.)

{¶ 27} City respondents argue that these provisions, read together, intend for general laws of the state to apply to the initiative and referendum process *and* to the charter-amendment process. City respondents also cite this court's decision in *Hackworth*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, in which we

denied a writ of mandamus to compel city officials to submit a proposed charter amendment to the ballot when the text of the charter-amendment petition did not comply with R.C. 731.31. *See id.* at ¶ 33-35. City respondents contend that *Hackworth* likewise forecloses the issuance of a writ of mandamus in this case.

{¶ 28} But Sandusky Charter Section 65 does not support city respondents' argument, because that provision incorporates "provisions for the initiative and referendum in municipal corporations." Though a charter amendment can be initiated by a petition signed by 10 percent of a municipality's electors, *see* Article XVIII, Section 9, Ohio Constitution, a charter amendment is *not* an "initiative." Indeed, R.C. 731.28 describes initiatives as "[o]rdinances and other measures providing for the exercise of any powers of government." We have observed that this definition does not describe a charter amendment. *See State ex rel. Ebersole v. Powell City Council*, 141 Ohio St.3d 17, 2014-Ohio-4283, 21 N.E.3d 274, ¶ 11.

{¶ 29} In *Ebersole*, we considered a charter-amendment petition that a city council voted not to approve for submission to the ballot because it deemed the proposed amendment to be "an unlawful delegation of legislative authority into private hands." *Id.* at ¶ 4. The city charter at issue in that case vested the city council with independent authority to assess the validity and sufficiency of initiative and referendum petitions. It was argued in *Ebersole* that the same authority applicable to initiative and referendum petitions allowed the council to assess the validity and sufficiency of a charter-amendment petition. *Id.* at ¶ 11. We rejected that interpretation. We noted that the city charter's provisions governing charter amendments contained no language similar to the provisions governing initiatives and referendums. *Id.* at ¶ 10. Instead, the charter "state[d] that '[a]ny section of this Charter may be amended as provided in Article XVIII, Section 9 of the Ohio Constitution, by the submission of the proposed amendment or amendments to the electors of the City.' " (Second set of brackets sic.) *Id.* We rejected the argument that the charter-amendment petition was governed by the

provisions of the city charter governing initiatives because, just as in R.C. 731.28, the city charter at issue described an initiative as " '[o]rdinances and other measures providing for the exercise of any powers of government.' " *Id.* at ¶ 11. We held that a charter amendment "is not an ordinance or 'measure[] providing for the exercise of [a] power[] of government.' " (Brackets sic.) *Id.* Similarly, here, we find that the general statutes governing initiatives and referendums do not apply to the charter-amendment process set forth in the Sandusky Charter.

{¶ 30} Nor does Section 75 of the Sandusky Charter justify city respondents' application of R.C. 731.31 to the charter-amendment petition. Section 75 states that "[a]ll general laws of the State applicable to municipal corporations * * * which are not in conflict with the provisions of this Charter" apply to Sandusky. This provision does not impose R.C. 731.31's requirements onto the charter-amendment process because, as noted above, R.C. 731.31 is a general law applicable to municipal *initiatives and referendums*.

{¶ 31} We acknowledge that in prior cases we have found that R.C. 731.31 had to be satisfied before a city legislative body had a duty to submit a charter amendment to the city's electors. *See, e.g., Hackworth*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, at ¶ 31; *Morris*, 71 Ohio St.3d at 55, 641 N.E.2d 1075; *State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 506, 756 N.E.2d 1228 (2001). But in *Ebersole*, 141 Ohio St.3d 17, 2014-Ohio-4283, 21 N.E.3d 274, we recognized that the process for submitting a charter amendment to the ballot must not be conflated with the process for an initiative. *Id.* at ¶ 11. R.C. 731.31, which by its terms applies only to initiative and referendum petitions, is inapplicable to a municipal charter-amendment petition unless something in the municipal charter incorporates the statute into the charter-amendment process. Because the Sandusky Charter contains no provision that incorporates the full-text requirement of R.C. 731.31 into the charter-amendment process, city respondents erred in finding the petition invalid.

14

**{¶ 32}** For these reasons, we grant a limited writ and compel respondent city-commission members to pass an ordinance to submit the proposed charter amendment to an election as set forth in Article XVIII, Section 8 of the Ohio Constitution and Section 82 of the Sandusky Charter, provided that the charter-amendment petition has enough valid signatures to qualify for the ballot.[3]

### B. *There is No Right to Placement on the November 8, 2022 Ballot*

**{¶ 33}** Relators ask specifically for city respondents and the board of elections to take the necessary steps to place their proposed charter amendment on the November 8, 2022 election ballot. The limited writ we grant today does not order this relief, because relators have no right under the Ohio Constitution or the Sandusky Charter to have the proposed amendment placed on this year's general-election ballot.

**{¶ 34}** The Sandusky Charter calls for a proposed amendment to be submitted to the electors "at the next regular *municipal* election" occurring between 60 and 120 days from the city commission's passage of an ordinance providing for the submission. (Emphasis added.) Sandusky Charter, Section 82. Article XVIII, Section 8 of the Ohio Constitution likewise provides for the proposed amendment to "be submitted to the electors at the next regular *municipal election* if one shall occur not less than sixty nor more than one hundred and twenty days" after passage of the ordinance to submit it. (Emphasis added.) The term "regular municipal election" is defined as an election occurring in November *of an odd numbered year*. Sandusky Charter, Section 44; *see also* R.C. 3501.01(B) (same). Thus, the next regular municipal election is in November 2023. Since there will be no "regular

---

3. The limited writ we grant is conditional because it is unclear on the record before us that the petition has enough valid signatures to qualify for submission to the electors. The board of elections found that relators' petition contained 466 valid signatures. Relators contend that 323 valid signatures are needed for the proposed charter amendment to qualify for the ballot. But the evidence cited for this assertion—the board of elections' report of its signature review—does not list the number of signatures required for the proposed amendment to qualify for the ballot.

municipal election" within 60 to 120 days of the city commission's passage of the ordinance to submit the charter-amendment proposal to Sandusky's electors, the city commission must submit the issue to the electors at a special election within those time parameters. *See* Sandusky Charter, Section 82. Although the city commission *could* have submitted the proposed amendment to the electors at the November 8 general election, if it had passed an ordinance doing so on or before September 9, there is nothing in Article XVIII, Section 8 of the Ohio Constitution or Section 82 of the Sandusky Charter that *required* the city commission to do so.

**{¶ 35}** Accordingly, relators are not entitled to an order compelling placement of the charter-amendment proposal on the November 8 ballot. Provided that the petition has enough valid signatures to qualify for submission to Sandusky's electors, relators are instead entitled to an order compelling the city commissioners to call a special election within the time parameters stated in Section 82 of the Sandusky Charter and Article XVIII, Section 8 of the Ohio Constitution.

## C. Attorney Fees

**{¶ 36}** Relators seek an award of attorney fees under R.C. 733.59. Under that statute, if a city law director fails, upon written request of a taxpayer, to apply for a writ of mandamus under R.C. 733.58 to enforce "any duty expressly enjoined by law or ordinance," the taxpayer "may institute suit in his own name, on behalf of the municipal corporation" (as was done here by relator McCloskey), *see* R.C. 733.59. And R.C. 733.61 allows a court, in its discretion, to award reasonable attorney fees to a successful taxpayer. *See Pennington*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, at ¶ 34.

**{¶ 37}** We deny attorney fees in this case. An award of fees under R.C. 733.61 is generally warranted only when a respondent's actions "were not reasonably supported by law." *Pennington* at ¶ 35; *see also Commt. for the Charter Amendment, City Trash Collection*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, at ¶ 46. Because of our precedent stating that R.C. 731.31 is

applicable to a charter-amendment petition, city respondents' position that the petition was deficient was well supported by this court's case law. An attorney-fee award is therefore inappropriate. *See Pennington* at ¶ 35.

## V. CONCLUSION

**{¶ 38}** R.C. 731.31 does not apply to relators' petition to amend Section 25 of the Sandusky Charter. We therefore grant a limited writ of mandamus ordering the Sandusky City Commission members to enact forthwith an ordinance providing for the submission of the proposed charter amendment to the electors and to submit the matter to a special election occurring within the time parameters of Section 82 of the Sandusky Charter and Article XVIII, Section 8 of the Ohio Constitution, provided that the Erie County Board of Elections certifies that the petition has enough valid signatures to qualify for submission.

Limited writ granted.

O'CONNOR, C.J., and FISCHER, DEWINE, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only.

DONNELLY, J., concurs in part and dissents in part, with an opinion joined by BRUNNER, J.

––––––––––––––––––

**DONNELLY, J., concurring in part and dissenting in part.**

**{¶ 39}** I concur in the court's decision to grant the motion to strike portions of relators' reply brief and in the court's judgment denying relators' request for an award of attorney fees. I also concur in the court's judgment to the extent that it denies relators' request for a writ of mandamus compelling placement of the proposed charter amendment on this year's general-election ballot.

**{¶ 40}** I write separately because I disagree with the court's judgment granting a writ of mandamus ordering the Sandusky City Commission "to enact forthwith an ordinance providing for the submission of the proposed charter

17

amendment to the electors and to submit the matter to a special election." Majority opinion, ¶ 38.

{¶ 41} In *State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 32, we stated:

> R.C. 731.31 provides that "each part of any initiative petition shall contain a full and correct copy of the title and text of the proposed ordinance or other measure." This requirement applies to charter amendment petitions. [*State ex rel.*] *Becker* [*v. Eastlake*], 93 Ohio St.3d [502,] 506, 756 N.E.2d 1228 [(2002)]. "[T]he purpose of this requirement is to fairly and substantially present the issue to electors in order to avoid misleading them." *Stutzman v. Madison Cty. Bd. of Elections*, 93 Ohio St.3d 511, 514-515, 757 N.E.2d 297 (2001); *see also Christy v. Summit Cty. Bd. of Elections*, 77 Ohio St.3d 35, 38, 671 N.E.2d 1 (1996) ("Omitting the title and/or text of a proposed ordinance is a fatal defect because it interferes with a petition's ability to fairly and substantially present the issue and might mislead electors").

(Fifth set of brackets sic.)

{¶ 42} There is nothing in the court's opinion that convinces me that *Hackworth* was wrongly decided. The opinion "acknowledge[s]" *Hackworth*, majority opinion at ¶ 31, and then effectively overrules it, relying on *State ex rel. Ebersole v. City Council of Powell*, 149 Ohio St.3d 501, 2017-Ohio-509, 75 N.E.3d 1245, a case that does not discuss *Hackworth* at all, let alone the lodestar of *Hackworth* (i.e., the applicability of R.C. 731.31 to charter-amendment petitions). Because the charter-amendment petition here does not contain "a full and correct

copy of the title and text" of the proposed charter amendment, I would deny in full relators' request for a writ of mandamus.

BRUNNER, J., concurs in the foregoing opinion.

_____

Loretta Riddle, for relators.

Walter Haverfield, L.L.P., Benjamin Grant Chojnacki, and Lisa Mack; and Brendan Heil, Sandusky Law Director, for respondents City of Sandusky, Brendan Heil, Richard Brady, Dennis Murray, Blake Harris, Mike Meinzer, Steve Poggiali, Wes Poole, and Dave Waddington.

_____